STATE of Missouri, Respondent,

v.

Walter Timothy STOREY, Appellant.

No. SC 82324.

Supreme Court of Missouri,
En Banc.

March 6, 2001.

Rehearing Denied April 24, 2001.

Deborah B. Wafer, Asst. Public Defender, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Stacy L. Anderson, Assistant Attorney General, Jefferson City, for respondent.

PRICE, Chief Justice.

Walter Timothy Storey killed Jill Frey on February 2, 1990. Following trial in 1991, a jury convicted him of first degree murder, armed criminal action, second degree burglary, and tampering with evidence. Upon the recommendation of the jury, the trial court sentenced Storey to death. In 1995, this Court affirmed the convictions, but reversed and remanded the death sentence after finding that Storey was denied his constitutional right to effective assistance of counsel during the penalty phase. *State v. Storey*, 901 S.W.2d 886 (Mo. banc 1995). In 1997, a second jury recommended a sentence of death, which the trial court adopted. This Court again reversed and remanded the sentence of death because of the trial court's failure to properly instruct the jury concerning Storey's constitutional right not to testify. *State v. Storey*, 986 S.W.2d 462 (Mo. banc 1999).

On December 17, 1999, the trial court adopted a third jury's recommendation that Storey be put to death. We have exclusive jurisdiction over the appeal. *Mo. Const. art. V, section 3.* We affirm the sentence of death.

## I. *Facts*

The facts underlying Storey's conviction, as previously outlined by this Court, are as follows:

On February 2, 1990, Storey received a divorce petition from his wife. Later that night, by his own admission, Storey got a knife from his kitchen, climbed up the balcony of his across-the-hall neighbor Jill Frey, entered her apartment, took her pocketbook and car keys, "struggled" with her, and stole her car.

The next day, again by his own admission, Storey reentered Frey's apartment using the stolen keys, tried to wipe his fingerprints from anything he had touched, cleaned under Frey's fingernails with her own toothbrush, put evidence in a dumpster, and threw Frey's keys in the lake behind her apartment.

The day after that, Frey failed to appear at work, so her co-workers came to check on her. They found Frey's dead body in the bedroom. She had six broken ribs; she had been hit in the face and head 12 times; she had a non-fatal stab wound in her side. Most or all of these injuries were inflicted before she was killed by two six-inch cuts across her throat.

*State v. Storey,* 901 S.W.2d 886, 891 (Mo. banc 1995).

## II. *Standards of Review*

The trial court is vested with broad discretion in determining the admissibility of evidence offered at the penalty stage of a capital case. *State v. Clayton,* 995 S.W.2d 468, 478 (Mo. banc 1999). "As a general rule, the trial court 'has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment.' " *State v. Winfield,* 5 S.W.3d 505, 515 (Mo. banc 1999) (quoting *State v. Kinder,* 942 S.W.2d 313, 331 (Mo. banc 1996)).

On direct appeal, we review the trial court "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Morrow,* 968 S.W.2d 100, 106 (Mo. banc 1998). Issues that were not preserved may be reviewed for plain error only, which requires the court to find that manifest injustice or miscarriage of justice has resulted from the trial court error. *State v. Worthington,* 8 S.W.3d 83, 87 (Mo. banc 1999).

## III. *Issues Raised on Appeal*

On appeal, Storey alleges eleven points of error. For the sake of convenience, we address his claims in the following order: A) the trial court erred during jury selection by refusing to quash the jury panel, in failing to grant the defendant's request to strike two jurors for cause, and in granting the State's request to strike a potential juror for cause (Storey's points 1 and 7); B) the trial court erred in admitting certain victim impact evidence and in limiting the testimony of an expert witness (Storey's points 4, 5, and 8); C) the trial court erred during closing arguments when it allowed the State to characterize the mitigating circumstances as "excuses" and the defendant's plea for mercy as a plea for "weakness" (Storey's points 2 and 3); D) the trial court erred when it overruled defense objections to jury instructions eleven and twelve (Storey's points 9 and 10); and E) the trial court erred by submitting two statutory aggravating circumstances to the jury (Storey's point 6).

Finally, we conduct an independent review of the sentence pursuant to section 565.035, RSMo 1994, and we address Storey's claim that the sentence of death in this case is disproportionate (Storey's point 11).

### A. Jury Selection

In two points of error, Storey alleges that the trial court abused its discretion during the jury selection process by overruling a defense motion for a mistrial, by overruling the defense motion to strike a venireperson for cause, and by granting the State's motion to strike a venireperson for cause.

### 1.

■ During jury voir dire, defense counsel asked the venire panel whether they understood the meaning of life imprisonment. In response, a venireperson asked whether a person sentenced to life without the possibility of parole might later be released from prison due to an appeal. The trial court explained to the venireperson that "[t]here is always a possibility that there are appeals that you are aware and that there is always the possibility that the governor has the power to give clemency." Storey argues that the explanation of the trial court violated United States Supreme Court precedent by shifting the sense of responsibility from the sentencing jury to the appellate court. *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). He suggests that the judge's remarks created a juror bias in favor of the death sentence.

We review Storey's allegation "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). In this case, the trial court issued its explanation of the appellate process to the second of two venire panels. Storey's jury was selected entirely from the first venire panel, which precluded them from hearing the comments of the trial court. Storey could not, therefore, suffer prejudice because of the alleged error. The point is denied.

### 2.

■ Storey alleges that the trial court committed two errors when exercising its discretion to strike jurors for cause. This Court does not disturb the trial court's ruling on juror qualification matters unless it is clearly against the evidence and amounts to a clear abuse of discretion. *State v. Barnett*, 980 S.W.2d 297, 303 (Mo. banc 1998).

### a.

■ First, Storey contends that the trial court abused its discretion when it overruled defense counsel's motion to strike two prospective jurors for cause. Storey contends that these jurors were not qualified because the first venireperson testified that a murderer's life had no value and the second venireperson testified that she could not consider graphic photographs of the crime scene and autopsy. In each case, however, the defense struck the venireperson peremptorily. Consequently, section 494.480.4, RSMo 1994, is controlling. The statute states, in relevant part:

> The qualifications of a juror on the panel from which peremptory challenges by the defense are made shall not constitute a ground for the granting of a motion for new trial or the reversal of a conviction or sentence unless such juror served upon the jury at the defendant's trial and participated in the verdict rendered against the defendant.

Section 494.480.4, RSMo 1994. Because the defense struck the prospective jurors in question, the qualification of the pro-

spective jurors cannot constitute a ground for reversal of conviction or sentence.

Storey further states that section 494.480.4 violates the United States Constitution and the Missouri Constitution. These issues were not raised until his motion for new trial was filed and are not supported here beyond mere abstract and conclusionary statements. They are waived. *See State v. Morovitz*, 867 S.W.2d 506, 510 (Mo. banc 1993); Rule 30.06(c); Rule 84.04(d)(1) and (4). The point is denied.

### b.

■ Storey next contends that the trial court abused its discretion by striking a venireperson because of his inability to consider the death penalty as a possible punishment. During the State's death-qualification voir dire, the following exchange occurred:

[Counsel]: [G]iven our discussions, given what you have heard so far, could you form the opinion that for killing Jill Frey, Mr. Storey should get the death penalty?

[Venireperson]: No.

[Counsel]: When you indicate no; is that because you have a moral or religious belief that stops you from considering it?

[Venireperson]: Yes.

\* \* \*

[Counsel]: Given that decision and that belief, realistically speaking, do you think there is any evidence I could give you that would let you temporarily set aside that belief so that in fact in this case, you could vote for the death penalty?

[Venireperson]: It's possible, but not likely. . . . It would only be in a very severe case. You would really have to show me some evidence.

Over defense counsel's objection, the trial court struck the venireperson for cause.

■ "Venirepersons may not be excluded simply because of general objections to the death penalty or conscientious or religious scruples against it. Venirepersons may be excluded only where it appears that their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and their oath." *State v. Roberts*, 948 S.W.2d 577, 597 (Mo. banc 1997) (citing *Gray v. Mississippi*, 481 U.S. 648, 657, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987) and *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)). In this case, the venireperson's equivocal and shifting responses to questions focusing on his ability to impose the death penalty provide a sufficient basis for the trial court to conclude that the venireperson could not consider the full range of punishment as required by the instructions and the juror's oath. *See State v. Clemons*, 946 S.W.2d 206, 225 (Mo. banc 1997). The point is denied.

### B. Mitigating and Aggravating Circumstances

In three points of error, Storey challenges the trial court's rulings concerning the admission of evidence in aggravation and mitigation of the death penalty. Specifically, he argues that the trial court erred in admitting the testimony of Lavon Marshall, Karen Stepson, Trinje Reidelberger, Bobby Reidelberger, and Jody Harrison; in admitting certain victim impact exhibits; and in sustaining the State's objection to the testimony of defense expert James Aiken.

### 1.

■ Storey first contends that the trial court erred in admitting eleven exhibits into evidence and in endorsing witnesses

Trinje Reidelberger, Bobby Reidelberger, and Jody Harrison because the State disclosed the evidence after the commencement of the trial. He further argues that his rights to due process and a fair trial were violated and that at a minimum "the defense would have wanted to voir dire the jury about the extraordinarily emotional and sensitive nature of the evidence involved."

■■■ "The basic object of the discovery process is to permit the defendant a decent opportunity to prepare in advance of trial and avoid surprise." *State v. Kilgore,* 771 S.W.2d 57, 66 (Mo. banc 1989). We recently addressed the issue of late endorsement of witnesses in *Moss v. State,* 10 S.W.3d 508 (Mo. banc 2000). In *Moss,* the trial court granted the State leave to endorse two additional witnesses only five days before the trial. In finding no error in the trial court's decision, we considered the following factors:

(1) Whether the defendant waived the objection;

(2) Whether the state intended surprise or acted deceptively or in bad faith, with the intention to disadvantage the defendant;

(3) Whether in fact defendant was surprised and suffered any disadvantage; and

(4) Whether the type of testimony given might readily have been contemplated.

*Moss v. State,* 10 S.W.3d 508, 514 (Mo. banc 2000).

#### a.

Storey argues that the trial court's decision prejudiced him (a) in conducting voir dire and (b) in addressing the evidence at trial. When objecting to the evidence, however, defense counsel failed to relay any concerns about the jury selection process. The trial court heard the following objection concerning the evidence at issue:

THE COURT: Now you wanted to make a record on something this morning, ma'm?

[Defense Counsel]: Yes, your Honor. Yesterday morning before we began opening statements, we indicated to the Court that we had just moments before received from the prosecuting attorney, Nels Moss, an endorsement of four new witnesses and then a number of items, a photo album.... [T]he matters that have now been disclosed are brand new witnesses, documents, items that have not previously been disclosed until the third day of trial. We are at a significant disadvantage.

THE COURT: Tell me about the first three [referring to Trinje Reidelberger, Bobby Reidelberger, and Jody Harrison].... These are basically victim character witnesses?

[Prosecutor]: Basically victim character witnesses....

THE COURT: So they don't have any knowledge of the incident itself?

[Prosecutor]: No, none whatsoever....

THE COURT: With respect to the first three, they are character witnesses what a good person the deceased was. I'm going to allow the endorsement of those first three witnesses, two Reidelbergers and Jody Harrison.... Is there anything further?

[Defense Counsel]: Yes, Judge. The physical exhibits, again, I will object to those items as having not been disclosed in a timely manner to the State....

THE COURT: I am going to deny the motion and allow it.

[Defense Counsel]: If I could, just for the record, indicate that ... we have no testimony, no statements, no notes.... If we had been given timely notification

of their endorsement, we would have exercised our discovery rights to depose them so we are fully prepared for the information they will provide. In light of the Court's ruling, we are going to be unable to provide effective assistance of counsel to question these witnesses on cross-examination should that be necessary. For that reason, I would request a mistrial or in the alternative, ask that these witnesses be excluded. . . .

THE COURT: I'll make them available so that you can talk to them before they testify.

(Record at 1123–1130). Defense counsel also made no further objection or statement, either at that time or at any time thereafter, that would explain why the relief provided was inadequate.

Before voir dire, the State endorsed witnesses Lavon Marshall, Karen Stepson, Gladys Frey, and Timothy Frey, who all testified as "victim impact" witnesses. Because of these endorsements, the defense should have readily contemplated the admission of evidence related to Jill Frey's character and her work with disabled children. Nevertheless, the defense failed to ask any voir dire questions concerning the jurors' sensitivities to these issues or to the witnesses identified prior to that time. To each venireperson, the defense simply asked the following three questions in substantially the same form:

(1) Do you think that you could realistically and meaningfully consider anything less than the death penalty?

(2) Do you believe that it is important for you that you know as much information as you can have about Storey, his background, and his character?

(3) If you were the foreman of the jury, could you sign a verdict sentencing Storey to life imprisonment even though eleven of the twelve jurors, including yourself, believed that he should receive a sentence of death?

We do not find Storey's argument that he was prejudiced during voir dire by the untimely disclosure of these witnesses credible. There is no indication that the defense would have changed its voir dire strategy due to the endorsement of three additional victim impact witnesses when the defense did not address already identified victim impact witnesses. The mere fact that one of the witnesses was confined to a wheel chair does not alter this conclusion, as the defense was fully notified of the State's intention to introduce testimony related to the victim's work with disabled children.

b.

We also find no indication that the defense suffered a disadvantage during the presentation of evidence or during closing arguments. Due to the timely endorsement of several other victim impact witnesses, the defense should have been prepared for this particular type of evidence. Moreover, the trial court, in its discretion, ordered a remedy to the late disclosure in accordance with Supreme Court Rule 25.16. The defense made no indication that this remedy was insufficient to prepare for the testimony or for admission of the exhibits. Finally, defense counsel chose not to cross-examine any of the character witnesses in this case, and there is no indication that an earlier disclosure would have prompted a change in this defense strategy. "Where counsel is surprised by opposing evidence at trial, but deals with that evidence in precisely the same manner as if he had been fully prepared, there is no reason to exclude that evidence, however significant, based on a discovery violation." *Kilgore*, 771 S.W.2d at 66.

#### c.

Under these facts, Storey did not suffer prejudice. The point is denied. We do not approve, however, the untimely endorsement of witnesses during the penalty phase hearing, without a showing of good cause. Trial courts should take care to protect the integrity of our process from such sloppy or disingenuous tactics. Nonetheless, a new trial is not warranted without some indication that Storey might have done things differently or that a different result might otherwise have occurred.

#### 2.

Storey next claims that certain victim impact evidence exceeded the boundaries of permissible victim impact evidence as discussed in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). He assigns error to the admission of certain testimony and to the admission of certain exhibits. We address each in turn.

#### a.

■ The State introduced the testimony of two victim impact witnesses, who testified about the physical, emotional, employment, and marital problems that resulted from Frey's death. Lavon Marshall testified that her apartment shared a common bedroom wall with Frey's apartment. She recounted that on the day of the murder she heard Storey murder Frey, but failed to call the police. Marshall told the jury that the murder severely traumatized her, forcing her to undergo four years of counseling and to give up her job. Defense counsel objected to Marshall's testimony.

The State also introduced the testimony of Karen Stepson, a close friend of Frey. She testified that she discovered Frey's body after the murder and that the experi-

ence caused her great fear and anxiety. She also told the jury that Frey was a well-liked person who was valued as a teacher of handicapped children. Stepson testified that Frey's students continually looked for her after her death and were confused that she never returned to school. The defense did not object to Stepson's testimony.

■ "Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). "As a general rule, the trial court 'has discretion during the punishment phase of trial to admit whatever evidence it deems helpful to the jury in assessing punishment.'" *State v. Winfield,* 5 S.W.3d 505, 515 (Mo. banc 1999) (quoting *State v. Kinder,* 942 S.W.2d 313, 331 (Mo. banc 1996)). Both Marshall and Stepson testified as to the "specific harm caused by the defendant." *Payne,* 501 U.S. at 825, 111 S.Ct. 2597. The trial court did not abuse its discretion in finding this evidence helpful to the jury in assessing punishment. The point is denied.

#### b.

■ The State also introduced eleven exhibits related to the structures and events that were dedicated to Frey following her death. The challenged evidence includes a photograph of Frey with her first class of handicapped students, a photograph of a memorial garden that was built in Frey's memory, a photograph of a memorial plaque commemorating the garden, a photograph of a "balloon release" ceremony by the children at the United Services school, a sketch of Frey that hung in the school as a memorial, a special edition of the school newsletter commemo-

rating Frey's death, a picture of the inscription on Frey's tombstone, a poem written by Trinje Reidelberger that she read to the jury, and a eulogy written by Jody Harrison that she read to the jury.

Victim impact evidence is admissible under the United States and Missouri Constitutions. *State v. Deck*, 994 S.W.2d 527, 538 (Mo. banc 1999); *see also* section 565.030.4, RSMo 1994. "[J]ust as the defendant is entitled to present evidence in mitigation designed to show that the defendant is a 'uniquely individual human being,' the State is also allowed to present evidence showing each victim's 'uniqueness as an individual human being.'" *Id.* at 538 (quoting *Payne v. Tennessee*, 501 U.S. 808, 822–23, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)). Victim impact evidence violates the Constitution only if it is so "unduly prejudicial that it renders the trial fundamentally unfair." *State v. Parker*, 886 S.W.2d 908, 927 (Mo. banc 1994) (quoting *Payne v. Tennessee*, 501 U.S. 808, 824–26, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).

Storey argues that the United States Supreme Court decision in *Payne* does not authorize the "plethora of exhibits created after Frey's death." Storey has failed, however, to show how the specific evidence admitted in this case prejudiced him in such a way as to render the trial fundamentally unfair.

A number of the exhibits were properly admitted. The photographs of Frey with her class, the balloon release, and the memorial garden serve to illustrate Frey's value to the community and the impact of her death upon her friends and co-workers. In other words, the exhibits help the jury to see the victim as something other than a "faceless stranger." *State v. Gray*, 887 S.W.2d 369, 389 (Mo. banc 1994). The trial court did not abuse its discretion in admitting these exhibits.

Likewise, the newsletter, poem, and eulogy each describe Frey's unique characteristics and the contributions that she made to society. Though reading a poem or eulogy may not be appropriate in every case, the writings in this case were read into evidence by their respective authors. Clearly, either author could have testified about the victim without the aid of a writing. The prosecutor's choice to use the recorded recollection simply does not result in unfair prejudice under these facts.

Only one exhibit reached beyond the scope of proper victim impact evidence. The photograph of Frey's tombstone was not relevant to show the impact of Frey's death, and it inappropriately drew the jury into the mourning process. Nevertheless, an analysis of improperly admitted victim impact evidence must focus on fundamental fairness. *State v. Knese*, 985 S.W.2d 759, 771–72 (Mo. banc 1999). Though a photograph of a victim's tombstone will rarely be admissible, there is no reason to treat it any differently than other types of evidence. *Id.* As with all errors in the admission of evidence, this Court reviews the admission of victim impact evidence "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Morrow*, 968 S.W.2d 100, 106 (Mo. banc 1998). The question, then, is whether the error in this case "so infects the sentencing proceeding as to render it fundamentally unfair." *Knese*, 985 S.W.2d at 772. In light of the other properly admitted evidence establishing the particularly senseless and brutal nature of the murder of Jill Frey, we simply can not conclude that the erroneous admission of an irrelevant photograph deprived Storey of a fair trial. The point is denied.

### 3.

In his next point, Storey argues that the trial court erred in excluding certain testimony of defense expert James Aiken. Specifically, Aiken testified that the classification of "maximum security inmate" would remain with Storey for the rest of his life because "the sentence and the crime that he committed will never ever change." The trial court sustained the State's objection based on the speculative nature of Aiken's statement.

"It is within the trial court's sound discretion to admit or exclude an expert's testimony...." *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991). Whether the Department of Corrections' classification system will ever change is a matter of speculation. Moreover, the Governor of Missouri retains the power to grant Storey clemency and reduce his sentence. *Mo. Const. art. IV, section 7.* The trial court did not abuse its discretion in excluding the speculative testimony. The point is denied.

### C. State's Closing Argument

In two points of error, Storey argues that the trial court abused its discretion in overruling defense counsel's objection to the State's closing argument. Specifically, he suggests that the trial court erred in allowing the prosecutor to argue that Storey's mitigating circumstances were a "laundry list of excuses," that Storey was "praying for weakness," and that statistical analysis made it likely that "at least two or three of [the jurors] were abused."

"The trial court has broad discretion in controlling the scope of closing argument and the court's rulings will be cause for reversal only upon a showing of abuse of discretion resulting in prejudice to the defendant." *State v. Deck*, 994 S.W.2d 527, 543 (Mo. banc 1999). "[B]oth parties have wide latitude in arguing during the penalty phase of a first-degree murder case." *State v. Carter*, 955 S.W.2d 548, 558 (Mo. banc 1997). "[E]ven if the prosecution's argument was improper, reversal is appropriate only if it is established that the comment of which Appellant complains had a 'decisive effect on the jury's determination.'" *State v. Armentrout*, 8 S.W.3d 99, 111 (Mo. banc 1999) (quoting *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998)). "In order for a prosecutor's statements to have such a decisive effect, there must be a reasonable probability that the verdict would have been different had the error not been committed." *Deck*, 994 S.W.2d at 543.

### 1.

. Storey first complains that the trial court abused its discretion when it allowed the State to characterize the circumstances offered in mitigation as "a laundry list of excuses." He suggests that the State's argument encouraged the jury to disregard the jury instructions and the law. This point mischaracterizes the State's role in closing arguments. "The prosecutor may comment on the evidence and the credibility of the defendant's case.... Counsel may even belittle and point to the improbability and untruthfulness of specific evidence." *State v. Hall*, 982 S.W.2d 675, 683 (Mo. banc 1998) (quoting *State v. Kreutzer*, 928 S.W.2d 854, 872 (Mo. banc 1996)).

In this case, the State did not argue that the jury should disregard the evidence. The prosecutor simply argued that the jury should give the mitigating evidence little or no weight. Clearly, the State is not required to agree with the defendant that the evidence offered during the penalty phase is sufficiently mitigating to preclude imposition of the death sentence. To the contrary, the State is free to argue

that the evidence is not mitigating at all, so long as the trial court properly instructs the jury to consider all of the evidence in making its decision. The point is denied.

### 2.

Storey next contends that the trial court abused its discretion by allowing the State to equate "mercy" with "weakness." During defense counsel's closing argument, the defense asked the jury for mercy. In response, the State argued to the jury that Storey did not deserve mercy.

> What the defense I think enjoys here, and they depend upon is that you are good and decent people, and for you killing is a last resort.... They come here and they beg you for mercy. Well they ask for mercy and they're praying for weakness.... Ladies and gentlemen, mercy is a good thing. Weakness is something that we can ill afford.... Mercy is something that the strong give to the weak and to the innocent. You are strong because you have the power here, but that man doesn't qualify for mercy.

Storey suggests that the prosecutor's argument encouraged the jury to disregard the mitigating factors in violation of Missouri law and the United States Constitution.

We have cautioned against any suggestion that the jury is weak if it fails to return a certain verdict. *State v. Rousan*, 961 S.W.2d 831, 851 (Mo. banc 1998). Nevertheless, "[a] prosecutor is allowed to argue that the defendant does not deserve mercy under the facts of a particular case." *Id.* In *Rousan*, the defense asked for mercy during closing arguments. The prosecutor then discussed the difference between mercy and weakness. He argued that the defendant did not deserve mercy under the facts of the case. In conclusion, he stated, "The defense has asked you for

mercy and what they are hoping for is weakness. I'm sorry. It's a hard choice. Weakness is something we can no longer afford. Do your duty. Thank you folks." *Id.*

As in *Rousan*, we find that the State's comment about weakness was isolated and part of a larger and otherwise appropriate argument. We can not say under the facts of this case that the trial court abused its discretion in overruling the defense objection or that there is a reasonable probability that the jury's verdict would have been different had the argument not been made. *Deck*, 994 S.W.2d at 543. The point is denied.

### 3.

Storey next argues that the trial court abused its discretion when it allowed the State to refer to matters not in evidence. During closing arguments, the prosecutor stated, "Folks, a lot of people come up rough, real rough. Chances are from the statistics that I read, there are at least two or three of you that were abused some way yourself, as I understand it, it is about somewhere around twenty percent.... The simple fact of the matter is, that's not good enough reason to kill, to commit murder."

"A prosecutor may not argue facts outside the record." *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995). The record in this case did not contain evidence concerning the statistical probability that the jurors had been abused. Therefore, the prosecutor's reference to this statistical evidence was improper. Nevertheless, the improper reference was an isolated and non-prejudicial piece of closing argument. The prosecutor may ask the jurors to draw upon their common experience and recognize that not all abused people commit murder. *Cf. State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998) ("a prose-

cutor may call upon the jurors' common experience in arguments concerning the prevalence of crime in the community and the personal safety of its inhabitants."). Moreover, the prosecutor may argue that the abuse Storey suffered did not outweigh the evidence in aggravation of punishment. *See State v. Knese*, 985 S.W.2d 759, 774–75 (Mo. banc 1999).

Though referring to statistical data not in evidence is improper during closing arguments, the reference in this case was isolated and not prejudicial. The point is denied.

### D. Jury Instructions

In two points of error, Storey contends that Instruction No. 11 and 12 violated his rights under the United States and Missouri Constitutions. He suggests that the trial court should have substituted the defendant's proffered instructions. This claim is without merit.

■ The language of Instruction No. 11 and 12 are patterned exactly after MAI–CR 3d 313.46B and 313.48B. The instructions are presumptively valid. *State v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998). "Whenever there is an MAI–CR instruction applicable under the law . . ., the MAI–CR instruction is to be given to the exclusion of any other instruction." *Id.*

■ The first modification suggested by the defense concerned MAI–CR 313.46B (Instruction No. 11), commonly referred to as the "life option" instruction. Storey contends that the trial court abused its discretion by refusing to insert the following highlighted phrase into the pattern instruction:

> You are not compelled to fix death as the punishment even if you do not find the existence of one or more of the mitigating circumstances sufficient to

outweigh the aggravating circumstances or circumstances which you find to exist. You must consider all of the circumstances in deciding whether to assess and declare the punishment at ***imprisonment for life by the Department of Corrections without eligibility for probation or parole or*** death. Whether that is to be your final decision rests with you.

Storey argues that the modification was necessary to ensure that the jury gave effect to all of the mitigating evidence. *See McKoy v. North Carolina*, 494 U.S. 433, 437–38, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990); *Mills v. Maryland*, 486 U.S. 367, 375, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

■ The requested modification, however, is superfluous. The language of MAI–CR 313.46B adequately informs the jury that it *must* consider all of the circumstances, including the mitigating circumstances, in determining the appropriate punishment. Jury instructions are not to be viewed in isolation, but are to be taken as a whole to determine whether error occurred. *Mallett v. State*, 769 S.W.2d 77, 82 (Mo. banc 1989). The only choice facing the jurors by the time they reached Instruction No. 11 was whether to sentence Storey to death or life imprisonment. By considering all of the evidence in determining whether to sentence Storey to death, the jury also necessarily considered all of the evidence in determining whether to sentence him to life imprisonment. The trial court did not commit error when it refused to submit the proffered instruction. The point is denied.

■ The additional modifications offered by the defense concerned pattern instruction MAI–CR3d 313.48B (Instruction No. 12), also known as the "Verdict Mechanics" instruction. In two proposed instructions, the defense inserted the fol-

lowing highlighted sentence into paragraph three:

> If you unanimously decide, after considering all of the evidence and instructions of law given to you, that the defendant must be put to death for the murder of Jill Lynn Frey, your foreperson must write into your verdict all of the statutory aggravating circumstances submitted in Instruction No. 8 which you found beyond a reasonable doubt and sign the verdict form so fixing punishment. *In addition, your foreperson must write into your verdict all of the other specifically mentioned aggravating circumstances submitted in Instruction No. ___ which you found beyond a reasonable doubt.*

When constructing MAI–CR3d 48B, the drafters of the Missouri Approved Instructions contemplated the exact language offered by the defense in this case. However, the Notes on Use specifically state that the proposed sentence "will be included only if MAI–CR3d 313.41B was given." In this case, MAI–CR3d 313.41B is inapplicable because the prosecution did not submit any non-statutory aggravating circumstances for the jury's consideration. Thus, the proposed modification is not only superfluous, but also contrary to the Notes on Use. A trial court does not commit error when it refuses to submit an incorrect instruction. *State v. Parkhurst*, 845 S.W.2d 31, 36–37 (Mo. banc 1992).

■ Despite the superfluous language in paragraph three of the proposed instructions, Storey argues that the trial court should have included the following highlighted language in paragraph five:

> If you are unable to unanimously find the existence of at least one statutory aggravating circumstance beyond a reasonable doubt as submitted in Instruction No. 8, or if you are unable to unanimously find there are aggravating circumstances which warrant the imposition of a sentence of death, as submitted in Instruction No. 9, *or if each juror determines that there are one or more mitigating circumstances sufficient to outweigh the aggravating circumstances found to exist, as submitted in Instruction No. ___,* then your foreperson must sign the verdict form fixing the punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole.

Storey suggests that this additional phrase is necessary for the instruction to comply with Section 565.030.4, RSMo 1994.

Section 565.030.4 outlines a four-step process that the jury must consider when assessing punishment in a capital case. The jury must assess the punishment at life imprisonment without the eligibility of parole (1) if the jury does not find beyond a reasonable doubt at least one statutory aggravating circumstance, (2) if the jury does not find that the evidence in aggravation of punishment warrants imposition of the death sentence, (3) if the jury concludes that there is evidence in mitigation of punishment that outweighs the evidence in aggravation of punishment, or (4) if the jury decides under all the circumstances not to assess punishment at death. Section 565.030.4, RSMo 1994.

The trial court instructed the jury concerning this four-step process in Instructions No. 8–11. Thus, the jury only reached Instruction No. 12 after undertaking the process outlined by the statute. Specifically, Instruction No. 10 told the jury that "if each juror finds one or more mitigating circumstances sufficient to outweigh the aggravating circumstances found to exist, then you must return a verdict fixing defendant's punishment at life imprisonment...." In paragraph four of Instruction No. 12, the jury was further admonished, "If you unanimously decide,

after considering all of the evidence and instructions of law, that the defendant must be punished ... by imprisonment for life ..., your foreperson will sign the verdict form so fixing the punishment." This paragraph adequately informed the jury of the proper verdict form should they choose to assess punishment at life imprisonment after considering steps three or four of the capital sentencing process. Storey's proposed modification added inapplicable language to paragraph five, which instructed the jury concerning the proper verdict form should the defendant be *ineligible* for the death sentence under steps one or two of the capital sentencing process. These instructions in no way precluded the jury from giving effect to the mitigating evidence. *See Buchanan v. Angelone,* 522 U.S. 269, 118 S.Ct. 757, 761, 139 L.Ed.2d 702 (1998); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The trial court did not err in rejecting the proposed modifications.

The proposed modifications to Instruction No. 12 included one additional paragraph that the defense chose not to address on appeal. Any objection concerning this modification is waived. *See State v. Morovitz,* 867 S.W.2d 506, 510 (Mo. banc 1993); Rule 30.06(c); Rule 84.04(d)(1) and (4). The point is denied.

### E. Statutory Aggravators

In his next point of error, Storey complains that the trial court erred in submitting two statutory aggravating circumstances to support the sentence of death. First, he contends that submission of the "pecuniary gain" aggravating circumstance violated the constitutional prohibition against double jeopardy. Second, he argues that the evidence presented during the penalty phase was insufficient to support a finding of either the "pecuniary

gain" aggravating circumstance or the "depravity of mind" aggravating circumstance.

*1.*

The trial court submitted the following "pecuniary gain" aggravating circumstance to the jury:

In determining the punishment to be assessed against defendant for the murder of Jill Lynn Frey, you must first unanimously determine whether one or more of the following aggravating circumstances exist:

1. Whether the defendant murdered Jill Lynn Frey for the purpose of the defendant receiving money or any other thing of monetary value from Jill Lynn Frey.

At each of Storey's previous sentencings, the jury failed to find the "pecuniary gain" aggravating circumstance. Storey contends that the submission of this aggravating circumstance to a third jury violates the constitutional prohibition against double jeopardy.

In *Poland v. Arizona,* the United States Supreme Court squarely addressed and rejected Storey's argument.

We reject the fundamental premise of petitioner's argument, namely, that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an "acquittal" of that circumstance for double jeopardy purposes.... Aggravating circumstances are not separate penalties or offenses, but are "standards to guide the making of [the] choice" between the alternative verdicts of death and life imprisonment.

*Poland v. Arizona,* 476 U.S. 147, 155–56, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (quoting *Bullington v. Missouri,* 451 U.S. 430, 438, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981)). In accordance with *Poland,* this Court further stated,

The principle that emerges from *Bullington* and *Poland* is that the failure to find a particular aggravating circumstance forms the basis for judgment of acquittal on the imposition of the death sentence only when there is a complete failure to find that any aggravating circumstance exists to support the death sentence.

*State v. Simmons*, 955 S.W.2d 752, 759–60 (Mo. banc 1997).

Storey contends that the recently decided cases of *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), suggest that the Court has begun to reexamine the application of the double jeopardy clause to sentencing. To the contrary, the *Apprendi* Court specifically rejected the contention that its ruling had any effect on the finding of aggravating factors in capital cases. *Apprendi*, 120 S.Ct. at 2366; *see also Jones*, 526 U.S. at 250–51, 119 S.Ct. 1215. The submission of the "pecuniary gain" aggravating circumstance did not violate the Double Jeopardy Clause. The point is denied.

### 2.

■ Storey also challenges the sufficiency of the evidence to sustain the aggravating circumstances found by the jury. Storey failed to preserve this claim for appeal. Issues that were not preserved may be reviewed for plain error only, which requires the court to find that manifest injustice or miscarriage of justice has resulted from the trial court error. *State v. Worthington*, 8 S.W.3d 83, 87 (Mo. banc 1999).

"As to the sufficiency of the evidence to support the aggravating circumstances, the test is whether a reasonable juror could reasonably find from the evidence that the proposition advanced is true beyond a reasonable doubt." *State v. Simmons*, 955 S.W.2d 752, 768 (Mo. banc 1997). In this case, Storey entered Jill Frey's apartment with a knife. He knew that she was home, and he admitted that his intent was to obtain something of value to purchase more alcohol. After murdering Frey, Storey rummaged through her belongings and took her wallet, keys, and vehicle. This evidence is certainly sufficient to support a finding that Storey murdered Frey for the purpose of receiving money or any other thing of monetary value. Furthermore, the evidence supports a finding that Storey brutally beat Jill Frey to death, inflicting no fewer than twenty blunt force impacts, six broken ribs, a stab wound to the abdomen, and two incise wounds to the neck. The evidence further supports the finding that all of these wounds were inflicted while Frey was alive and conscious. The "depravity of mind" aggravating circumstance is fully supported by the evidence. The point is denied.

### F. Proportionality Review

■ In his final point, Storey contends that his sentence is disproportionate under section 565.035, RSMo 1994. Section 565.035 requires us to independently review the sentence of death to determine (1) whether it was imposed under the influence of passion or prejudice or any other arbitrary factor; (2) whether there was sufficient evidence to support the finding of statutory aggravating circumstances and any other circumstance found; and (3) whether the sentence was excessive or disproportionate to the penalty imposed in similar cases considering the crime, the strength of the evidence, and the defendant.

Storey argues that the prosecutor improperly appealed "to the jury's passions and prejudices through improper victim

impact evidence and through other improper arguments and procedure." The three trials of this case unfortunately exhibit a consistent attempt by the prosecutor to push the envelope of proper advocacy. We condone the prosecutor's strategy no more in this trial than in the previous two that were reversed. Nonetheless, the extent of the prosecutor's overzealous behavior here does not reach that of *Storey I*. We find in this case that the imposition of the death penalty by a third jury was in response to a senseless and brutal murder and not as a result of any improper influence of passion, prejudice, or any other arbitrary factor.

We next review the trial court's findings to determine if the evidence supports - beyond a reasonable doubt - the existence of an aggravating circumstance and any other circumstance found. Section 565.035, RSMo 1994; *State v. Clayton*, 995 S.W.2d 468, 484 (Mo. banc 1999). In this case, the jury unanimously found two statutory aggravating circumstances as a basis for considering the death sentence. The evidence supports, beyond a reasonable doubt, a finding that Storey murdered Jill Frey for the purpose of receiving money or any other thing of monetary value and that the murder of Jill Frey involved depravity of mind. Section 565.032.2(4) and (7), RSMo 1994.

Lastly, we must determine whether the sentence of death is excessive and disproportionate considering the crime, the strength of the evidence, and the defendant. Section 565.035.3(3), RSMo 1994. In making this determination, we consider similar cases where the death penalty was imposed. *Clayton*, 995 S.W.2d at 484. This Court has upheld sentences of death in similar cases where the defendant evidenced depravity of mind through excessive acts of brutality and abuse. *See, e.g., State v. Knese*, 985 S.W.2d 759 (Mo. banc

1999); *State v. Ervin*, 979 S.W.2d 149 (Mo. banc 1998); *State v. Johnston*, 957 S.W.2d 734 (Mo. banc 1997); *State v. Taylor*, 929 S.W.2d 209 (Mo. banc 1996). We have also found the death sentence appropriate where the defendant entered the victim's home and committed murder for pecuniary gain. *See, e.g., State v. Wolfe*, 13 S.W.3d 248 (Mo. banc 2000); *State v. Worthington*, 8 S.W.3d 83 (Mo. banc 1999); *State v. Jones*, 979 S.W.2d 171 (Mo. banc 1998); *State v. Barnett*, 980 S.W.2d 297 (Mo. banc 1998); *State v. Simmons*, 955 S.W.2d 752 (Mo. banc 1997); *State v. Kreutzer*, 928 S.W.2d 854 (Mo. banc 1996). The penalty in this case is neither excessive nor disproportionate.

### IV. Conclusion

The judgment is affirmed.

LIMBAUGH, WHITE, HOLSTEIN, WOLFF and BENTON, JJ., concur.

LAURA DENVIR STITH, J., not participating.