GRUENDER, Circuit Judge,
concurring in part and concurring in the judgment.
I write separately to express my partial disagreement with the analysis of Storey’s claims concerning “victim impact evidence” in section II.B.l of the majority opinion. In particular, I do not join in the opinion’s thinly-veiled criticism of Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the governing Supreme Court precedent regarding the admissibility of victim impact evidence in capital sentencing trials. Nor do I join in the opinion’s grudging application of the standard set out in Payne to the disputed evidence in this case. Because I agree with the majority’s conclusion that Storey is not entitled to relief on the relevant claims, I concur in the judgment as to those claims. I concur in the rest of the majority opinion without reservation.
Perhaps the most troubling aspect of the majority opinion is its seeming unwillingness to accept Payne’s central premise— that victim impact evidence should not be treated differently than other relevant evidence. Before Payne, victim impact evidence was verboten, for the Supreme Court had held in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), “that the Eighth Amendment prohibits a capital sentencing jury from considering ‘victim impact’ evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim’s family.” Payne, 501 U.S. at 817, 111 S.Ct. 2597. The Court granted certiorari in Payne to reconsider the holdings in Booth and Gathers, which it said had “unfairly weighted the scales in a capital trial” by placing “virtually no limits ... on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances” while barring “the State ... from either offering ‘a quick glimpse of the life’ which a defendant ‘chose to extinguish,’ or demonstrating the loss to the victim’s family and to society which has resulted from the defendant’s homicide.” Id. at 822, 111 S.Ct. 2597 (internal citation omitted) (quoting Mills v. Maryland, 486 U.S. 367, 397, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (Rehnquist, C.J., dissenting)). The Court announced that it was “now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant’s moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant.” Id. at 825, 111 S.Ct. 2597. Accordingly, the Court held that “if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar.” Id. at 827, 111 S.Ct. 2597.
After Payne, victim impact evidence is no longer to be treated as a separate category, subject to special constitutional restrictions. As the Court explained,
[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim’s family is relevant to the jury’s decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.
Id. Of course, this does not mean that victim impact evidence is completely immune from constitutional scrutiny. On the contrary, “[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism *527 for relief.” Id. at 825, 111 S.Ct. 2597 (citing Darden v. Wainwright, 477 U.S. 168, 179-83, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)).
Here, Storey asserts that some of the victim impact evidence introduced in his third penalty-phase trial exceeded the limits established in Payne. More specifically, Storey challenges the admissibility of certain exhibits, see ante, at 517, as well as the testimony of Trinje Reidelberger, Robert Reidelberger, Jody Harrison, Lavon Marshall, and Karen Stepson, see ante, at 516-17. The Missouri Supreme Court rejected Storey’s claims concerning this evidence on the merits. State v. Storey (Storey III), 40 S.W.3d 898, 908-09 (Mo.2001). The question, then, is whether the Missouri Supreme Court’s adjudication of these claims “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
Curiously, the majority decides not to apply the deferential standard set out in § 2254(d)(1) to Storey’s claims concerning the testimony of Trinje Reidelberger, Robert Reidelberger, and Jody Harrison.[13] See ante, at 518-19. Nevertheless, the court finds on de novo review that Storey is not entitled to relief on the relevant claims. See ante, at 518-19. Applying § 2254(d)(1) to the rest of the disputed evidence, the majority concludes that Storey has not shown that the Missouri Supreme Court’s adjudication of his claims resulted in a decision that was either contrary to, or involved an unreasonable application of, Payne v. Tennessee, the governing Supreme Court precedent. See ante, at 519-21. The outcome the majority reaches is undoubtedly correct, so I concur in the judgment as to these claims.
Although I agree with much of the analysis in section II.B.l, there are three points of disagreement that prevent me from joining that portion of the majority opinion in full. First, it seems to me that the narrow scope of judicial review under § 2254 ordinarily does not leave room for this court to criticize the existing state of Supreme Court precedent, to invite the *528 Supreme Court to expand on or refine-existing precedent, or to chide -prosecutors who have not transgressed existing precedent. Yet the majority opinion does all of those things. I do. not agree with the majority’s suggestion that the standard set out in Payne is “vague,” “barely decipherable,” or otherwise unworkable. See ante, at 518. The Court in Payne held that victim impact evidence is not subject to special constitutional restrictions, so the Court should not be faulted for announcing a general standard rather than a list of specific rules. Because Payne sets out a general standard, I would find that Payne calls for case-by-case adjudication of claims concerning victim impact evidence based on generally applicable principles of due process. In turn, I would hold that federal courts reviewing adjudications of such claims under § 2254(d)(1) must accord state courts even greater latitude reasonably to decide whether a convicted defendant has shown fundamental unfairness. See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (“[Evaluating whether a rule application was unreasonable requires considering the rule’s specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.”). In this instance, Storey plainly has not shown that he is entitled to relief under § 2254(d)(1). Indeed, even if we reviewed all of the disputed victim impact evidence de novo, Storey would not come close to showing that the evidence was so unduly prejudicial that it rendered his trial fundamentally unfair.
In light of the foregoing considerations, there is simply no need for hand-wringing about where “the line” is located; Payne teaches that the line is in the same place for victim impact evidence as it is for other types of evidence. Cfi ante, at 518. Likewise, I see no pressing need to entreat the Supreme Court for “more guidance” about the permissible scope of victim impact evidence. Cf. ante, at 518.[14] While I do not necessarily endorse all of the choices made by the prosecutors who tried this case, I see no plausible basis for finding that their conduct in the third penalty-phase trial infringed Storey’s constitutional rights.[15] Thus, I would refrain from directing gratu *529 itous reproofs to trial counsel (or counsel on appeal), and I would not accuse other state and federal prosecutors of “push[ing] the envelope with this type of evidence,” ante, at 518.
The second point of disagreement relates to the majority opinion’s expressions of concern regarding the testimony of Jody Harrison, Karen Stepson, and Lavon Marshall. The majority opinion suggests in several places that H^rison’s, Stepson’s, and Marshall’s testimony is problematic insofar as each witness discussed the impact of the murder on her own life, as opposed to merely describing “the unique characteristics of [the victim] as an individual.” See, e.g., ante, at 520. The majority identifies Marshall’s testimony as the most problematic because her testimony focused exclusively “on the things she heard _ the night of the murder,” ante, at 520 (recall that Marshall heard the murder through the apartment wall she shared with Frey, her neighbor and acquaintance, ante, at 516), along with “the devastating impact of Frey’s murder on her life,” ante, at 520. This comports with the district court’s finding that Marshall’s testimony “was at the boundary of acceptable victim impact evidence.” Storey v. Roper, No. 4:05-cv-2073, 2008 WL 2518551, at *40 (E.D.Mo. June 16, 2008).
Here again, the majority seems unwilling to embrace the proposition that, after Payne, victim impact evidence is no longer to be treated as a separate category, subject to special constitutional restrictions. Yet the majority opinion does not explain why evidence about the adverse effects of a murder on surviving witnesses should be considered particularly dubious — much less categorically inadmissible — under Payne. I am convinced that the disputed testimony about the impact of Storey’s heinous crime, including Marshall’s testimony about the torment she has suffered, qualifies as “evidence of the specific harm caused by the defendant” and thus does not pose a constitutional problem. See Payne, 501 U.S. at 825, 111 S.Ct. 2597. In the end, the majority acknowledges that Payne does not expressly prohibit such testimony, ante, at 521, so its earlier expressions of concern ring hollow.[16] See also ante, at 521 (conceding that “Marshall’s testimony arguably falls within the ambit of Payne ”).
The third and final point of disagreement concerns the majority’s apparent distress over the fact that Trinje Reidelberger cried during her testimony. See *530 ante, at 519 (“[W]e are troubled by the record which indicates that Trinje was crying throughout much of her testimony... .”). It strains the judicial imagination to envision a scenario in which a witness’s “emotional presentation” of otherwise admissible evidence, see ante, at 519, could singlehandedly result in fundamental unfairness. Why the majority gives any credence to Storey’s empty rhetoric on this issue is puzzling.
I am not aware of any authority, from this circuit or elsewhere, that would justify granting relief to Storey on the ground that Trinje Reidelberger wept while testifying. There is, however, authority that virtually compels us to reach the opposite conclusion. See, e.g., United States v. Johnson, 495 F.3d 951, 977 (8th Cir.2007) (rejecting the defendant’s argument that a “tearful and emotional reading of [a] poem” rendered her trial fundamentally unfair); United States v. Nelson, 347 F.3d 701, 712-14 (8th Cir.2003) (rejecting the defendant’s argument that the “emotional and, on occasion, tearful testimony” of six victim impact witnesses, including one witness who “was unable to compose herself,” rendered his trial fundamentally unfair). I therefore agree with the majority’s finding that Storey’s trial was not “so infect[ed]” by Trinje Reidelberger’s display of emotion “as to render the trial fundamentally unfair.” Ante, at 519. But I see no good reason for this court to suggest that Trinje Reidelberger fell short of an immutable standard about how witnesses must conduct themselves. The Constitution does not demand witnesses to act like automatons, devoid of human feeling. It should come as no surprise that some witnesses will be overcome with emotion when called on to testify about a friend or family member who has been murdered. I am confident that state and federal trial courts are fully capable of responding appropriately in those circumstances both to protect the defendant’s right to a fair trial and to ensure that the witness is treated with respect.
For the foregoing reasons, I concur in the judgment as to Storey’s claims concerning victim impact evidence, and I concur in the rest of the majority opinion.

. According to the majority, “the Missouri Supreme Court failed to adjudicate the substantive facets of [Trinje Reidelberger’s, Robert Reidelberger’s, and Jody Harrison’s] testimony.” Ante, at 518. I disagree. The relevant part of Trinje Reidelberger’s testimony consisted of reading the poem she wrote about the victim, Jill Frey, and the relevant part of Jody Harrison’s testimony consisted of reading the eulogy she gave at Frey's funeral. I am convinced that the Missouri Supreme Court rejected Storey’s challenges to this testimony on the merits, stating that "[t]hough reading a poem or eulogy may not be appropriate in every case, the writings in this case were read into evidence by their respective authors.” Storey III, 40 S.W.3d at 909. The court went on to say that “[c]learly, either author could have testified about the victim without the aid of a writing,” and concluded that "[t]he prosecutor’s choice to use the recorded recollection simply does not result in unfair prejudice under these facts.” Id. The Missouri Supreme Court did not mention Robert Reidelberger’s testimony in this section of its opinion. But in the section dealing with Storey's claim concerning the late disclosure of certain victim impact evidence, see ante, at 514, the court noted that “[t]he mere fact that one of the witnesses [Robert Reidelberger] was confined to a wheel chair” did not affect its analysis, see Storey III, 40 S.W.3d at 907. In any event, Storey does not meaningfully argue that Robert Reidelberger's testimony made his trial fundamentally unfair — and I can see no remotely plausible basis for such an argument — so I would hold that Storey has abandoned the portion of his claim relating to Robert. See Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe, 578 F.3d 753, 763 n. 13 (8th Cir.2009).

. It is entirely possible that Storey will seek review in the Supreme Court and that the Court may decide to use this case as a vehicle for reconsidering Payne. So far, however, the Court has consistently declined to revisit its stance on victim impact evidence, which has remained undisturbed for nearly two decades. See, e.g., Kelly v. California, 555 U.S. -, 129 S.Ct. 564, 172 L.Ed.2d 445 (2008) (denying the petitions for writs of certiorari in two capital cases where juries were shown video memorials dedicated to the victims); see also Kelly v. California, 555 U.S. -, 129 S.Ct. 567, 568,-L.Ed.2d-(2008) (Breyer, J., dissenting from denial of certiorari) (describing one of the video memorials as "poignant, tasteful, artistic, and, above all, moving”). But see Kelly, 129 S.Ct. at 567 (Stevens, J., statement respecting denial of certiorari) ("Having decided [in Payne] to tolerate the introduction of evidence that puts a heavy thumb on the prosecutor's side of the scale in death cases, the Court has a duty to consider what reasonable limits should be placed on its use.”); Kelly, 129 S.Ct. at 568 (Breyer, J., dissenting from denial of certiorari) ("[E]xamples can help elucidate constitutional guidelines. And in my view, the Court should grant certiorari and consider these cases in an attempt to do so.”).

. The majority opinion insinuates that the reason the Missouri Supreme Court twice reversed Storey’s death sentence had something to do with the misuse of victim impact evidence in Storey's first two penalty-phase trials. See ante, at 518. But the error in Storey's second penalty-phase trial — the trial court’s refusal to instruct the jury that no adverse inference could be drawn from Storey’s decision not to testify — certainly had no connection to the disputed victim impact evidence in this case. See State v. Storey (Storey II), 986 S.W.2d 462, 463-65 (Mo.1999). And, *529 as far as I can tell, the four errors in the prosecutor’s closing argument in Storey’s first penalty-phase trial also had nothing to do with the disputed victim impact evidence in this case. See State v. Storey (Storey I), 901 S.W.2d 886, 900-02 (Mo.1995) (finding that the prosecutor argued facts outside the record, personalized his argument to the jury, improperly argued that the victim’s brother would have been justified in killing Storey if he had discovered Storey attacking the victim, and improperly argued that the jury must weigh the value of Storey’s life against the value of the victim's life).

. Describing Marshall's testimony as especially "problematic,” ante, at 520, also seems inconsistent with this court's holding in United States v. Bolden, 545 F.3d 609 (8th Cir. 2008), cert. denied, 558 U.S. -, 130 S.Ct. 796, •— L.Ed.2d-(2009), which the majority opinion cites in footnote 8. While the majority suggests that Bolden is "not necessarily probative” given the different posture of this case, ante, at 520 n. 8, I have no doubt that Bolden is, relevant. If nothing else, Bolden decisively refutes Storey’s assumption that testimony about trauma suffered by a surviving witness is per se irrelevant and unduly prejudicial. See Bolden, 545 F.3d at 627 (holding that testimony by a co-worker who assisted the victim after the victim was shot was "clearly admissible,” even though the testimony included a description of "the impact that experience had on the witness's life”).