# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2936

_____

Walter T. Storey,          *
                                           *

             Appellant,        *

                                           *    Appeal from the United States

     v.                                *    District Court for the Eastern

                                           *    District of Missouri.

Don Roper,             *

                                           *

             Appellee.         *

_____

Submitted: November 18, 2009
Filed: April 28, 2010

_____

Before MELLOY, BEAM, and GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Walter Timothy Storey appeals the district court's[1] denial of his 28 U.S.C. § 2254 petition for habeas corpus in this death penalty case. Five issues have been certified for appeal–two claims regarding victim impact testimony; one claim about the pecuniary gain statutory aggravator; and two claims of ineffective assistance of counsel. We affirm the denial of habeas corpus relief.

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

# I.    BACKGROUND

Jill Frey, a special education teacher in St. Charles, Missouri, was murdered in her apartment in St. Charles in February 1990. Storey, who lived with his mother, was her across-the-hall neighbor. On the day of the murder, a Friday, he had received by mail a divorce petition from his estranged wife. Presumably in response, Storey drank alcohol heavily, and when he ran out of alcohol, he decided to rob Frey in order to purchase more alcohol. Late Friday night or early Saturday morning, he took a knife from his apartment, climbed Frey's balcony, and entered an unlocked sliding glass door. After brutally murdering Frey by beating and inflicting multiple slash and stab wounds, Storey stole Frey's car keys, purse and car. On Sunday, Storey returned to the scene to cover up the murder, wiping down the apartment, scrubbing Frey's fingernails, throwing away clothing and disposing of other incriminating evidence. Co-workers discovered Frey's body on Monday, when she did not show up at school for work. After giving several different stories to the police, Storey admitted most of the above details, but contended that he only remembered struggling with Frey, not killing her. He proceeded to trial, advancing the theory that a large man forced Storey into Frey's apartment and killed Frey because the alleged assailant thought Frey was Storey's mother, all at the behest of Storey's estranged wife's father.

The jury rejected Storey's theory and convicted him of first-degree murder, armed criminal action, second-degree burglary, and tampering with evidence. Following a penalty-phase trial, the jury recommended the death penalty, which the trial court imposed. In 1995, the Missouri Supreme Court affirmed the convictions, but reversed and remanded the death sentence after finding that Storey was denied his constitutional right to effective assistance of counsel for failing to object to improper prosecutorial arguments during the penalty phase. State v. Storey, 901 S.W.2d 886, 902-03 (Mo. 1995) (Storey I). In 1997, a second jury recommended a sentence of death, which the trial court adopted. The Missouri Supreme Court again reversed and remanded the sentence of death because the trial court failed to properly instruct the

jury concerning Storey's constitutional right not to testify. State v. Storey, 986 S.W.2d 462, 464-66 (Mo. 1999) (Storey II). After a third penalty-phase trial in September 1999, the trial court again adopted the jury's recommendation that Storey be put to death, and the Missouri Supreme Court affirmed on March 6, 2001. State v. Storey, 40 S.W.3d 898 (Mo. 2001) (Storey III). Storey filed a petition for certiorari on July 20, 2001, which was denied on October 1, 2001. 534 U.S. 921 (2001).

On July 19, 2001, Storey filed a Rule 29.15 motion for post-conviction relief in Missouri state court, which was denied on March 18, 2004. Storey appealed, and the Missouri Supreme Court affirmed on October 18, 2005. Storey v. State, 175 S.W.3d 116 (Mo. 2005) (Storey IV). The court also denied his motion for a rehearing on November 22, 2005. Storey filed a Rule 91[2] petition for habeas corpus with the Missouri Supreme Court on November 15, 2006, which was denied on December 19, 2006. Storey filed a second Rule 91 petition with the Missouri Supreme Court on December 21, 2006, which was denied on January 30, 2007. On January 18, 2007, he filed a motion to recall the mandate, which the Missouri Supreme Court denied on February 27, 2007. On March 5, 2007, Storey filed the current petition for habeas corpus pursuant to 28 U.S.C. § 2254.

The district court rejected the government's position that the petition should be dismissed as untimely, but denied relief on all grounds and granted a certificate of appealability on four of the claims enumerated above. Prior to the case being set for argument, we expanded the certificate to include another claim concerning victim impact evidence presented at the third penalty-phase hearing.

---

[2]Missouri Supreme Court Rule 91 is the vehicle for prisoners to file petitions for habeas corpus in Missouri state court in extremely limited circumstances, but these motions are distinct from Rule 29.15 motions for post-conviction relief, wherein traditional claims of trial error and ineffective assistance of counsel should be brought. State ex rel. Nixon v. Jaynes, 63 S.W.3d 210, 214-17 (Mo. 2001).

## II.    DISCUSSION

### A.    Timeliness

The government initially contends that Storey's petition is untimely, arguing that Storey's most recent actions for state post-conviction relief–the Rule 91 petitions and motion to recall the mandate–did not toll the statute of limitations.[3]  As we read the briefs, the state does not contest that if Storey is given the benefit of tolling for these filings, the petition was timely.  The state argues that the Rule 91 petitions and the motion to recall the mandate are not applications for state post-conviction or other collateral relief because Storey was simply trying to manipulate the system.  Until recently we had not decided whether Rule 91 petitions serve to toll the habeas corpus statute of limitations found in 28 U.S.C. § 2244.  However, in Polson v. Bowersox,

---

[3]The applicable statute of limitations is as follows:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    . . .

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

595 F.3d 873 (8th Cir. 2010), we held that Rule 91 petitions qualify as "other collateral review" for purposes of the habeas corpus statute of limitations. Id. at 875. We have also previously held that a Missouri motion to recall the mandate is "other collateral review" within the meaning of § 2244. Bishop v. Dormire, 526 F.3d 382, 384 (8th Cir. 2008). Under Polson and Bishop, Storey's Rule 91 motions and his motion to recall the mandate met the qualifications set forth in § 2244 and tolled the statute while pending. As we did in Polson, 595 F.3d at 875, we also decline the state's entreaty to "narrow Bishop and hold that a defendant cannot evade the statute of limitations by filing repetitive (and meritless) petitions in the state courts." (Appellee's Opening Brief at 11). Accordingly, we affirm the district court's ruling that the petition was timely.

## B. Merits

In this habeas corpus action, we review the district court's conclusions of law de novo and its factual findings for clear error. McGehee v. Norris, 588 F.3d 1185, 1193 (8th Cir. 2009). We may not grant relief for claims adjudicated on the merits by the Missouri state courts unless the adjudication was contrary to, or involved an unreasonable application of federal law as determined by the Supreme Court, or an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision may be incorrect, yet still not unreasonable, and we will grant relief only if the state court decision is both incorrect *and* unreasonable. McGehee, 588 F.3d at 1193.

### 1. Victim Impact Evidence

In Claims 9 and 10 of the habeas corpus petition, Storey argues he was unfairly prejudiced by the government's introduction of victim impact evidence, much of which was not disclosed until the first day of the penalty-phase trial. There are two components to Storey's argument–that Storey was prejudiced by the late hour of the

disclosure of some of the victim impact witnesses and exhibits, and that the victim impact evidence from five particular witnesses and certain exhibits violated due process as set forth by the Supreme Court in Payne v. Tennessee, 501 U.S. 808 (1991).

The Missouri Supreme Court adjudicated the late-disclosure facet of Storey's claim and denied the point. Storey III, 40 S.W.3d at 908. The government argues that this portion of the claim is not cognizable because Storey did not present the federal grounds for the argument to the Missouri state court, and his attempts to do so now are procedurally barred. In his reply brief, Storey refutes this and cites to portions of his state appellate brief wherein he cites to the Federal Constitution, and also to the Missouri Supreme Court opinion stating that Storey argued his "rights to due process and a fair trial" were violated by late disclosure. Id. at 906. Additionally, the district court ruled on the merits. We have examined the record and agree with Storey that the federal claim was presented to, and adjudicated by, the Missouri state courts. Accordingly, we review the merits of the claim.

On September 15, 1999, the first day (after two days of voir dire, which occurred September 13-14, 1999) of the third penalty-phase trial, defense counsel and the prosecutor met with the trial court outside the jury's presence. Defense counsel informed the trial court that the prosecution had just given her new discovery, and she objected to its use in the prosecution's opening statement. The new discovery consisted of previously undisclosed witnesses and exhibits. The court told counsel that it would not rule until defense counsel had a chance to examine the evidence, and warned the government not to refer to this evidence in its opening statement. The next day, defense counsel again raised the issue of the undisclosed witnesses and exhibits. The state responded that the three witnesses were victim character witnesses who had no knowledge of the circumstances of the murder. The trial court allowed the state to call these witnesses and allowed the exhibits into evidence. Defense counsel further protested that she had no information regarding the witnesses, and the court

-6-

responded that the three witnesses would be available for questioning before they testified later that day. The record does not disclose whether counsel interviewed these witnesses before they testified. We note that in the transcript, there was a break in the proceedings shortly before the three witnesses testified, though it is not clear how long the break continued. Storey argues he was unfairly surprised by these witnesses and exhibits and also prejudiced in his ability to conduct voir dire because of the late notice of these victim witnesses, in violation of the Fifth and Sixth Amendments.

The Missouri Supreme Court held that while it was unfortunate that disclosure occurred so late, Storey was not unduly prejudiced nor were his constitutional rights violated. Storey III, 40 S.W.3d at 908. Counsel did have timely notice of four other victim impact witnesses, so counsel was able to prepare voir dire victim impact questions. Id. at 907. The court also noted that defense counsel chose not to cross-examine any of the character witnesses in this case, and there is no indication that an earlier disclosure would have prompted a change in this defense strategy. The court specifically noted that where a party is surprised by evidence, but deals with the evidence in the same manner that it would have if it had been prepared, there is no reason to exclude the evidence based on a discovery violation. Id.

Although the Missouri court did not mention federal law or Supreme Court precedent (nor was it required to, see Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (per curiam)), its decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Storey argues that the state courts violated his Fifth Amendment right to notice, citing Gardner v. Florida, 430 U.S. 349, 358 (1977), wherein the Supreme Court held that the sentencing process must satisfy the requirements of due process. In Gardner the Court held the defendant was denied due process when the death sentence was imposed on the basis of information in a presentence investigation report which was not disclosed to the defense. Id. at 362. Storey also cites Lankford v. Idaho, 500 U.S. 110, 122, 127 (1991), where the Court

held that a defendant who had no notice that the judge might impose the death penalty had been denied due process.

Neither of these cases establishes that the Missouri Supreme Court's decision to deny relief on the basis of untimely disclosure was contrary to, or an unreasonable application of, Supreme Court precedent. A state court's decision is contrary to clearly established Supreme Court law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A decision is an unreasonable application of Supreme Court precedent if it correctly identifies the governing legal rule but unreasonably applies it to the facts of the prisoner's case. Id. at 407-08. Storey knew there would be victim impact testimony and knew Frey was a special education teacher. Although probably quite limited, Storey had an *opportunity* to interview the witnesses before their testimony, and he had the opportunity (though he did not take it), to cross-examine the witnesses. In Gardner, the death penalty was imposed before the defendant knew why it was imposed. In Lankford, the defendant was unaware that the judge was considering imposing the death penalty. Neither of these cases are factually "indistinguishable," nor does the Missouri court opinion contradict the Supreme Court's governing law or unreasonably apply this law to the facts of Storey's case. Storey's Fifth Amendment claim is without merit.

Storey also argues that the state court violated his Sixth Amendment rights as set forth in Ring v. Arizona, 536 U.S. 584 (2002);[4] Apprendi v. New Jersey, 530 U.S.

_____

[4]Ring, which extended this rule to the determination of aggravating factors in a death penalty case and held that Arizona's system of judge-found aggravators was unconstitutional, 536 U.S. at 609, was decided after Storey III, and therefore cannot be the basis of clearly established Supreme Court precedent. See Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (noting that the statutory phrase "clearly established

466 (2000); and <u>Jones v. United States</u>, 526 U.S. 227 (1999). This line of cases holds that a defendant is entitled to have a jury decide that he "is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." <u>Apprendi</u>, 530 U.S. at 477 (quotation omitted). Storey argues that the <u>Jones</u> line of cases impacts the late disclosure of victim impact evidence because discovery rules traditionally applied to guilt-phase evidence apply with equal force to penalty-phase evidence. He essentially asserts that he had a Sixth Amendment right to notice of this evidence. Although that is true, this theory does not afford Storey habeas corpus relief under our standard of review. As the Missouri Supreme Court noted, Storey did have notice of, and did expect other victim impact evidence to be presented at the penalty-phase trial, and this adjudication was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The district court correctly denied relief on the notice aspect of this claim.

Substantively, the two victim impact claims deal with the testimony of, in Claim 9, Robert Reidelberger (a handicapped former student of the victim), Trinje Reidelberger (Robert's mother), and Jody Harrison (a longtime friend), as well as the exhibits introduced during the testimony of various witnesses. Claim 10 involves the testimony of Lavon Marshall (a neighbor of the victim who heard part of the attack), and Karen Stepson (a friend and co-worker of the victim). The Reidelbergers both testified about the impact Frey had on them as a teacher, and how Robert, who was set to graduate soon from high school at that point, would never have received a mainstream education without Frey's efforts. Trinje also read a poem that she had composed to commemorate Frey's life. The record indicates that Trinje sobbed throughout much of her testimony.

---

Federal law" refers to "the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision*" (emphasis added)).

Harrison testified that she had known Frey for twenty years and was one of her closest friends. Following Frey's death, Harrison began carrying a weapon and checked her apartment and car before entering either. She gave the eulogy at Frey's funeral, though she usually avoided speaking in front of large groups. Over defense counsel's objection, Harrison then read the eulogy at the penalty-phase trial. Marshall testified that she heard the assault take place because she shared a common apartment wall with Frey. She harbored guilt for not calling authorities after hearing the strange noises, had to receive counseling, and she eventually gave up her job. Stepson was the victim's friend and one of the co-workers who initially found Frey's corpse. Stepson had to explain Frey's death to both her children and Frey's students. She was fearful and confused, cried frequently, and though she received counseling, she has been unable to assuage these symptoms.

Defense counsel also objected to the admission of the following exhibits during the victim impact testimony: Exhibit 87, a picture of Frey with her co-workers on the school playground; Exhibit 88, a photo of a memorial garden built in her memory; Exhibit 89, a photo of a sign saying that the garden was dedicated to Frey; Exhibit 90, a photo of children and staff releasing balloons to say goodbye to Frey; Exhibit 91, a picture of Frey with her first class of students; Exhibit 92, a drawing done by one of Frey's friends that now hangs at the school; Exhibit 93, a memorial newsletter sent out by the school; Exhibit 95, a photo of Frey on Santa Claus's lap when she was a young child; Exhibits 105 and 106, photographs of Frey's tombstone including the inscription upon which was a copy of Trinje's poem; Exhibit 107, a copy of Trinje's poem; and Exhibit 108, a copy of the eulogy.

Storey asserts that the foregoing testimony and exhibits violated the principles set forth in Payne, 501 U.S. 808. In Payne, the Supreme Court considered the admissibility of penalty-phase testimony by the mother of a deceased victim. The woman testified about the effect of the crime on her surviving young grandson, who had witnessed the murder of his mother and baby sister and had himself nearly been

killed by the same attack. The Court held that the Eighth Amendment does not erect a per se bar to relevant victim impact evidence or prosecutorial argument on the subject. Id. at 827. The Court held that the victim's mother's testimony was admissible, noting that similar to the defendant's right to present evidence in mitigation during the penalty phase, the "[s]tate has a legitimate interest in . . . reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss to society and in particular to [her] family." Id. at 825 (quotation omitted). The state does not have unfettered discretion to offer such evidence, however. If a witness or remark in a particular case so infects the sentencing proceeding so as to render it fundamentally unfair,[5] the defendant may seek relief under the Due Process Clause of the Fourteenth Amendment. Id. In a concurring opinion, Justice O'Connor found the allegedly offending evidence survived the due process analysis because the evidence was brief and redundant of evidence already admitted during the guilt phase. Id. at 831-33 (O'Connor, J., concurring).

With regard to Claim 9, the Missouri Supreme Court first set forth the governing law that victim impact evidence is admissible under the Missouri and federal constitutions and that the state is allowed to present evidence showing each victim's uniqueness as an individual human being. Storey III, 40 S.W.3d at 909. The court quoted Payne and found that victim impact evidence violates the Constitution only if it is so "unduly prejudicial that it renders the trial fundamentally unfair." Id. (quotation omitted). With regard to the exhibits, the court found that all but one–the photograph of the tombstone–were properly admitted because they showed Frey's uniqueness as a human being. The photograph of the tombstone was improper, it said, but was not so unduly prejudicial as to render the trial fundamentally unfair. Id.

---

[5]The "fundamentally unfair" due process standard typically means that the petitioner must show that there is a reasonable probability that the alleged error affected the outcome of the trial and that absent the impropriety, the verdict likely would have been different. Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007).

Payne offers very little specific guidance about the permissible extent and content of victim impact evidence. The evidence should show the victim's uniqueness as an individual and the resulting loss to society, the evidence must be relevant, and not so unfairly prejudicial as to infect the sentencing proceeding and render it fundamentally unfair. Payne, 501 U.S. at 825, 827. Decided in 1991, Payne is the Supreme Court's last word on victim impact evidence. Without more guidance, it is exceedingly difficult to find that a particular state court's decision is contrary to, or an unreasonable application of, the Court's clearly established victim impact jurisprudence. As the Supreme Court lengthens its silence on the issue, it seems that prosecutors, likely of both the state and federal variety, will continue to push the envelope with this type of evidence.[6] At oral argument, counsel for the state audaciously stated that the "state knows what the line is" and presumably does not cross it with excessive displays of victim impact evidence. With all due respect, we could not disagree more. As evidenced by the three penalty-phase trials in this case alone (two of which were reversed and remanded for a new trial based in whole or in part upon improper prosecutorial argument), "the line" is barely decipherable and rarely sacrosanct in these highly charged, emotional death penalty trials.

Nonetheless, under our extremely deferential standard of review as set forth in § 2254(d), the Missouri Supreme Court's conclusion that all of the exhibits, save the picture of the tombstone, likely fell within the vague ambit of permissible Payne evidence, was not contrary to, nor an unreasonable application of, Payne. And while the picture of the tombstone was improper, the Missouri court reasonably concluded that in light of all of the other relevant and admissible evidence presented at the third penalty-phase trial, the photo of the tombstone did not render the penalty-phase trial fundamentally unfair–that without the picture of the tombstone, the jury would likely not have rendered a death penalty verdict.

---

[6]In Storey III, the Missouri Supreme Court noted that "[t]he three trials of this case unfortunately exhibit a consistent attempt by the prosecutor to push the envelope of proper advocacy." 40 S.W.3d at 916.

-12-

With regard to the testimony of Trinje and Robert Reidelberger and Jody Harrison, though not pressed by either party or the district court, it appears to us that the Missouri Supreme Court failed to adjudicate the substantive facets of their testimony and instead only ruled upon the late notice aspect. Storey III, 40 S.W.3d at 906-09. Accordingly, we review the substance of the Payne claim with regard to these three witnesses de novo, rather than under the deferential § 2254 standard, because it was not adjudicated on the merits. See Middleton v. Roper, 455 F.3d 838, 856 (8th Cir. 2006) (holding that where an issue was raised to the state courts, but ignored, we review the district court's fact findings for clear error and conclusions of law de novo).

The district court found that this testimony by Frey's friends, including reading poems and/or eulogies, was the type of evidence that has previously been considered permissible under our precedent construing Payne. The testimony about Frey's impact on the lives of children was allowable because this demonstrated her activities and involvement in the community, and the loss due to her death. The district court also held that the evidence was not unduly prejudicial because it added little to the uncontested testimony of Frey's mother.

We agree with the district court's analysis that the testimony of both Reidelbergers and Harrison fall within the range of testimony allowable by Payne. Trinje, Robert and Harrison were all close friends of Frey and their testimony revealed Frey's uniqueness as an individual. While some of Harrison's testimony did wander into the arena of what effect the death had on *Harrison's* life–that she carried a weapon and checked her car and apartment before entering–as opposed to simply describing Frey as an individual, it was not enough to render the trial fundamentally unfair. Harrison's testimony on these points was relatively brief, especially in the context of the entire penalty-phase proceeding. And while we are troubled by the record which indicates that Trinje was crying throughout much of her testimony, which included reading her poem, our limited guidance from Payne does not allow us

-13-

to conclude that the emotional presentation of this particular evidence–which clearly was the *type* of evidence contemplated by Payne–constituted a violation of due process. In other words, the fact that Trinje was extremely emotional during her testimony did not so infect the proceedings so as to render the trial fundamentally unfair. Consequently, the district court did not err in denying relief based upon the victim impact evidence in Claim 9.

In Claim 10, Storey challenges the testimony of Stepson (the co-worker who found Frey's body) and Marshall (the neighbor who heard the attack). The Missouri Supreme Court adjudicated this claim on the merits. The court quoted Payne and noted that the state trial court has discretion to admit "whatever evidence it deems helpful to the jury in assessing punishment." Storey III, 40 S.W.3d at 908 (quotation omitted). The court further reiterated the Payne principles that victim impact evidence is simply a "'method of informing the sentencing authority about the specific harm caused by the crime in question,'" and that trial judges have great discretion in allowing this testimony. Id. (quoting Payne, 501 U.S. at 825). The Missouri Supreme Court ultimately denied the claim, holding that because Marshall and Stepson testified about the specific harm caused by Storey, the trial court did not abuse its discretion in admitting this testimony. Storey III, 40 S.W.3d at 908.

Storey argues this formulation was contrary to Payne because the "whatever evidence it deems helpful" statement is an incorrect statement of the law as set forth in Payne. As noted above, Payne held that relevant victim impact evidence should be treated as any "other relevant evidence is treated." Payne 501 U.S. at 827. Relevant evidence, of course, is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. Rule of Evid. 401. While relevant evidence is not explicitly defined as "helpful" evidence, the words "relevant" and "helpful" are not uncommonly used together in describing admissible evidence. See, e.g., United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998) (concluding that expert testimony was admissible because it was relevant and helpful). Furthermore,

-14-

as we have previously noted, a state court decision may be incorrect; yet we will grant relief only if the state court decision is also objectively unreasonable. McGehee, 588 F.3d at 1193. Accordingly, we turn to the question of whether the Missouri Supreme Court's adjudication of Claim 10 was contrary to, or involved an unreasonable application of, Payne.[7]

Most of the testimony of Stepson, like the testimony at issue in Claim 9, clearly falls into Payne's permissible category. Stepson described Frey's teaching abilities and her value as a friend. But, like Harrison's testimony, some of Stepson's testimony included the effect Frey's murder had on Stepson's life as opposed to simply describing Frey as an individual. Marshall's testimony, however, is even more problematic. Marshall was not a friend of Frey's and had only met her in passing. Her testimony was focused on the things she heard the night of the murder, and the devastating impact of Frey's murder on her life, but not at all on the unique characteristics of Frey as an individual.

Under our extremely deferential standard of review, and returning to the definition of what is "contrary to" or an "unreasonable application" of Supreme Court precedent, we cannot grant relief on this claim under § 2254(d). As previously noted, a state court's decision is contrary to Supreme Court precedent if it applies a rule

---

[7]Storey further cites Penry v. Lynaugh, 492 U.S. 302 (1989), rev'd on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002), for the proposition that the jury's verdict should be a reasoned moral response to the evidence, Penry, 492 U.S. at 319, and argues that the principles of Penry were violated by the Missouri Supreme Court's decision. Penry involved the Supreme Court's determination that the jury should have been allowed to consider evidence of the petitioner's mental retardation and childhood abuse in the mitigation portion of his penalty-phase trial. Id. at 322. We understand the broad legal principle that Storey is attempting to advance, but upon the record before us, we cannot conclude that the Missouri Supreme Court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court law as set forth in Penry and we focus our analysis upon Payne.

contradicting the Court's governing law or if, upon the same or similar facts as a decision of the Court, it arrives at a different result than the Court. Taylor, 529 U.S. at 405-06. And the decision is an unreasonable application of clearly established Supreme Court law if it unreasonably applies the correct governing rule to the facts of the prisoner's case. Id. at 407-08. Storey cannot prevail under either of these tests. Factually speaking, Payne involved a rather generic (at this point in time) version of victim impact evidence–the victim's mother testifying about the impact of the murder on the victim's son. It certainly did not involve the testimony of a neighbor who barely knew the victim and whose testimony focused upon the dramatic impact that the murder had upon her life. However, the governing legal principles of Payne did not *prohibit*[8] such testimony either, and Marshall's testimony arguably informed "the sentencing authority about the specific harm caused by the crime in question." Payne, 501 U.S. at 825. Because Marshall's testimony *arguably* falls within the ambit of Payne, we simply cannot conclude that the state court's adjudication of this matter was an unreasonable application of Supreme Court precedent, see Taylor, 529 U.S. at 411-12 (discussing the distinction between a state court's erroneous application of federal law and an *unreasonable* application), or contrary to clearly established Supreme Court precedent, see Thaler v. Haynes, 130 S. Ct. 1171, 1174 n.2 (2010) (per curiam) ("A legal principle is 'clearly established' within the meaning of [§ 2254] only when it is embodied in a holding of [the Supreme] Court.").

Finally, even if the testimony of Marshall and Stepson was improper, we conclude that Storey was not prejudiced by its admission. Payne 501 U.S. at 825. In light of all of the other evidence, including the other properly admitted victim impact testimony and the grisly nature of Storey's crime, it is unlikely that the allegedly

---

[8]Though not necessarily probative on the issue of whether the Missouri court's decision was an unreasonable application of Supreme Court precedent, in United States v. Bolden, 545 F.3d 609, 627 (8th Cir. 2008), cert. denied, 130 S. Ct. 796 (2009), a direct appeal of a federal death penalty case, we held that testimony by a witness who assisted the victim was admissible under Payne, and part of that testimony included the impact the traumatic experience had on the witness's life.

improper admission of this testimony rendered the penalty-phase trial fundamentally unfair. The district court did not err in denying relief on Claim 10.

## 2.    Pecuniary Gain Aggravator

At Storey's first two penalty-phase proceedings, the jury failed to find the "pecuniary gain" aggravating circumstance,[9] but instead found the existence of other statutory aggravators en route to recommending sentences of death. In Claim 14 of his petition for habeas corpus, Storey contends that the submission of the pecuniary gain aggravating circumstance to the third jury violated the constitutional prohibition against double jeopardy. The Missouri Supreme Court adjudicated this claim on the merits and denied it. The court noted that "aggravating circumstances" submitted to the jury were not separate offenses or penalties, but instead were "'standards to guide the making of [the] choice'" between the alternative verdicts of death and life imprisonment. Storey III, 40 S.W.3d at 914 (alteration in original) (quoting Poland v. Arizona, 476 U.S. 147, 155-56 (1986) (quotation omitted)). The Missouri Supreme Court held that under Poland, the failure to find a particular aggravating circumstance forms the basis for judgment of acquittal on the imposition of the death sentence only when there is a complete failure to find that any aggravating circumstance exists to support the death sentence. Storey III, 40 S.W.3d at 915. Accordingly, the court denied Storey's double jeopardy arguments. Id.

---

[9]The "pecuniary gain aggravator" is one of the aggravating circumstances the trial court submitted to the jury during each of the three penalty-phase trials. This aggravating circumstance instruction asked the jury to consider whether Storey murdered Frey for the purpose of receiving money or any other thing of monetary value from Frey. Storey III, 40 S.W.3d at 914.

-17-

In <u>Poland</u>, an Arizona court[10] sentenced the petitioner to death based on one aggravating circumstance–that the crime was unusually heinous, cruel or depraved. The trial court did not find the existence of the "pecuniary gain" aggravator. On direct appeal, the Arizona Court of Appeals found that there was insufficient evidence to support the "heinous, cruel or depraved" aggravator and remanded the case for this and other reasons. Importantly, the Arizona Court of Appeals also noted that the trial judge improperly rejected the "pecuniary gain" aggravator based upon an erroneous legal conclusion, and noted that if Poland were convicted at the next trial, the court "may find the existence of [the pecuniary gain] aggravating circumstance." <u>State v. Poland</u>, 645 P.2d 784, 801 (Ariz. 1982). Upon remand, Poland was again convicted and the trial court once more imposed the death penalty, this time based upon both the "heinous, cruel, or depraved" aggravator, the "pecuniary gain" aggravator, and a newly injected aggravator based upon a prior violent conviction. Both the conviction and sentence were affirmed on direct appeal. In the petition for habeas corpus, Poland argued that the state court of appeal's decision in his first direct appeal was effectively an "acquittal" of the death penalty, and that the Double Jeopardy Clause barred the state from pursuing and imposing the death penalty in the second trial.

The Supreme Court held that, indeed, the Double Jeopardy Clause does prohibit a second death sentence when an earlier proceeding resulted in an acquittal of the death sentence. <u>Poland</u>, 476 U.S. at 152. However, under the facts of Poland's case, he was not entitled to relief, because he was never "acquitted" of the death penalty. <u>Id.</u> at 155. Instead, at each stage of the protracted proceedings, there was never a finding that the prosecutor had failed to prove its case that the death penalty was appropriate. <u>Id.</u> Importantly, the Court noted that "[a]ggravating circumstances are not separate penalties or offenses, but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment." <u>Id.</u> at 156

_____

[10]Poland's Arizona trials occurred in the late 1970s or early 1980s, long before the Supreme Court's 2002 holding in <u>Ring</u> that death penalty aggravators must be found by a jury to be in accord with the Sixth Amendment. <u>Ring</u>, 536 U.S. at 609.

-18-

(second alteration in original) (quoting <u>Bullington v. Missouri</u>, 451 U.S. 430, 438 (1981)). The Court remarked that if during any of the sentencing proceedings the fact finder had determined that no aggravating circumstances were supported by the evidence, Poland's argument would have been successful. <u>Poland</u>, 476 U.S. at 156-57.

In adjudicating Storey's pecuniary gain claim, the Missouri Supreme Court found that the principles set forth in <u>Poland</u> were not violated because Storey was sentenced to death by each of the penalty-phase juries. Further, neither of the first two cases was reversed on the basis that there was insufficient evidence of the aggravators in order to impose the death penalty. <u>Storey III</u>, 40 S.W.3d at 914-15. The Missouri Supreme Court also rejected the notion that the Supreme Court's Sixth Amendment decisions, <u>Jones</u> and <u>Apprendi</u>, had changed this analysis in any way. <u>Id.</u> at 915.

The Missouri court's adjudication of this claim was not contrary to, and did not unreasonably apply, Supreme Court precedent. The court very appropriately analyzed and applied <u>Poland</u>, and determined that relief was not warranted. Storey's argument is strikingly similar to the argument made by the <u>Poland</u> petitioner. Based upon the Supreme Court's definition of "acquittal" in the context of a death sentence as explicated in <u>Poland</u>, Storey has never been acquitted of the death penalty. The state court correctly dispatched its duties under § 2254(d).[11] This point is without merit.

### 3.    Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the performance and prejudice standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside

---

[11]Both parties discuss <u>Ring v. Arizona</u>, 536 U.S. 584 and <u>Sattazahn v. Pennsylvania</u>, 537 U.S. 101 (2003). Again, both of these cases were decided after <u>Storey III</u> and cannot be the basis for clearly established Supreme Court precedent.

the wide range of professionally competent assistance," id. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong requires proof "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Storey alleges that he received ineffective assistance of counsel during the 1991 guilt-phase trial when trial counsel failed to investigate the defense that Storey was unable to deliberate on the day of the murder. Storey alleges that three doctors would have testified that Storey was unable to deliberate due to his state of extreme intoxication. Storey raised this claim in his 1992 post-conviction case, and the argument was rejected by the state post-conviction court. The court found the evidence lacked credibility and conflicted with Storey's testimony. However, Storey did not appeal this finding in his state post-conviction appeal, and it is therefore procedurally defaulted. The district court found that Storey had not shown cause or prejudice for the default, or that there was a fundamental miscarriage of justice, because the deliberation evidence was not "new" evidence.

Storey contends that this argument is not procedurally defaulted because even though he did not advance it on post-conviction appeal, he did raise it in one of the Rule 91 petitions for habeas corpus. However, our opinion in Sweet v. Delo, 125 F.3d 1144, 1150-51 (8th Cir. 1997) forecloses this argument. In Sweet, we held that a Rule 91 habeas corpus petition cannot be used to raise a claim that was procedurally defaulted during the post-conviction process. Id. Storey cites a Missouri Supreme Court case holding that Rule 91 relief would be available to a petitioner who can show cause and prejudice or manifest injustice for his failure to raise his claims earlier. See State ex rel. Nixon v. Jaynes, 63 S.W.3d 210, 215 (Mo. 2001). Jaynes is distinguishable. The Jaynes court noted that in extremely rare circumstances–when a defendant is impeded from complying with the post-conviction rules through no fault of his own, or when the basis for the claim was not earlier available–a state

prisoner can use the Rule 91 petition to raise claims that could have been raised in the Rule 29.15 post-conviction motion. <u>Id.</u> Neither of those rare circumstances is present here. Storey certainly knew of the basis for the ineffective assistance claim because he actually brought the claim in the Rule 29.15 motion. He simply chose not to appeal that decision. Absent those rare circumstances, Rule 91 is not the vehicle for curing a procedural default. <u>Id.</u> The principles announced in <u>Jaynes</u> do not allow Storey's Rule 91 petition to cure the default in this case.

To overcome the procedural default, Storey must show cause for not presenting the claim on post-conviction appeal, and prejudice from the failure, or a fundamental miscarriage of justice–meaning that he is actually innocent. <u>Coleman v. Thompson</u>, 501 U.S. 722, 748, 750 (1991); <u>Schlup v. Delo</u>, 513 U.S. 298, 324-27 (1995). Storey cannot make the threshold showing of cause. He certainly knew of the claim because it was brought in the Rule 29.15 petition. And <u>Thompson</u> makes clear that state post-conviction counsel's errors cannot form the basis for the cause to excuse a procedural default. 501 U.S. at 755-57.

Nor can Storey establish a fundamental miscarriage of justice: that he is actually innocent. In order to establish this, a petitioner must present new reliable evidence that he was innocent of the crime of which he was convicted. <u>House v. Bell</u>, 547 U.S. 518, 537 (2006). Storey's evidence is not "new," that is, evidence "that was not available at trial." <u>Nance v. Norris</u>, 392 F.3d 284, 291 (8th Cir. 2004). But even assuming that the evidence was newly discovered, he is not entitled to relief. The state post-conviction court's finding that the evidence lacked credibility and conflicted with Storey's testimony is a factual finding which we presume to be correct. 28 U.S.C. § 2254(e). And, the district court's assessment of Storey's "new" evidence was not clearly erroneous. <u>Wooten v. Norris</u>, 578 F.3d 767, 782 (8th Cir. 2009) (standard of review). The district court found that Storey's evidence of actual innocence would likely not have resulted in the jury finding him innocent of the murder because the evidence was "not particularly convincing and easily marginalized by the State." <u>Storey v. Roper</u>, No. 4:05-CV-2073, 2008 WL 2518551, at *12 (E.D. Mo. June 16,

2008). While the proffered experts' opinions suggested that Storey could not formulate the mens rea for murder, the district court was entitled to, and did, consider these proffered opinions in the context of all of the other evidence the jury would have considered, including the state's contrary evidence. See Wooten, 578 F.3d at 782. Accordingly, the district court did not clearly err in evaluating this evidence, and properly found that this claim was procedurally defaulted.

In Claim 39, Storey alleges that he received ineffective assistance of counsel when his counsel failed to object to two aspects of the prosecutor's closing argument. In the first, Storey complains about the portion of closing argument wherein the prosecutor equated the jury's possible "mercy" with "weakness." Storey's trial counsel filed a motion in limine to exclude this argument, which the trial court denied, but the trial court warned the prosecutor to refrain from suggesting that a life sentence equates to the jury showing "weakness." Nonetheless, the prosecutor made a statement equating "mercy" with "weakness" during the closing argument of the third penalty-phase trial. Counsel objected to the statement as being an "improper personalization" and the objection was sustained, but Storey contends that counsel should have also referenced, as part of the objection, a then-recent Missouri Supreme Court case, State v. Rousan, 961 S.W.2d 831 (Mo. 1998). Storey alleges that in Rousan, the Missouri Supreme Court held that a similar argument was improper.[12]

The Missouri Supreme Court rejected Storey's argument, essentially holding that because the underlying claim based upon Rousan was not a congnizable error, the ineffective assistance claim also failed. Storey IV, 175 S.W.3d at 154. We agree that Storey did not receive ineffective assistance of counsel based on counsel's failure to

---

[12]However, even in Rousan, the court held that while prosecutors "should avoid . . . any suggestion that the jury is weak if it fails to return a certain verdict," the court did not reverse Rousan's conviction, and instead held that while improper, this remark was an isolated part of the larger and otherwise appropriate closing argument. Rousan, 961 S.W.2d at 851. We also note that during the pretrial motion in limine hearing, defense counsel did, in fact, reference Rousan.

-22-

reference <u>Rousan</u>, because in <u>Rousan</u>, the prosecutor used nearly the exact same phrase as in Storey's case, and while the Missouri Supreme Court did not approve of the language, it did not reverse. <u>Rousan</u>, 961 S.W.2d at 851. There is no reason to believe the Missouri Supreme Court would have reversed in Storey's case even if <u>Rousan</u> had been referenced, especially because the trial court *sustained* counsel's objection to the statement. This ineffective assistance claim is without merit, and the Missouri Supreme Court's failure to grant relief on this basis was not contrary to, or an unreasonable application of, <u>Strickland</u>.

Also in this claim, Storey argues that counsel was ineffective for failing to object to the following portion of closing argument by the prosecutor:

> I don't want to get into the business of measuring the value of one life against another, but I don't think there is any debate that Jill Lynn Frey was a fine woman. You know most of us in this life go through our lives and don't do a great deal of harm and we don't do a great deal of good either, but this woman was doing a lot of good. And another part of the tragedy is that that's been seized from us and taken from us.

<u>Storey IV</u>, 175 S.W.3d at 154.

A version of this claim was part of the basis for post-conviction relief after Storey's first trial. <u>Storey I</u>, 901 S.W.2d at 902. In closing argument at the first penalty-phase trial, the prosecutor had stated: "Whose life is more important to you? Whose life has more value? The Defendant's or Jill Lynn Frey's?" <u>Id.</u> In <u>Storey I</u>, the Missouri Supreme Court reversed for a new penalty-phase trial because trial counsel failed to object to this and other improper arguments by the prosecutor. <u>Id.</u> at 902-03. In <u>Storey IV</u>, the Missouri Supreme Court adjudicated Storey's current claim on the merits and found that the prosecutor's statement did not mischaracterize the law and that any objection to it would not have been sustained. Accordingly, counsel could not have been ineffective for failing to make a non-meritorious objection. <u>Storey IV</u>, 175 S.W.3d at 154-55.

-23-

Storey argues that the Missouri court unreasonably applied <u>Strickland</u> because there is no meaningful distinction between the reversible-error argument in <u>Storey I</u>, and the allowed argument in <u>Storey IV</u>. We disagree, and find that the Missouri Supreme Court did not unreasonably apply <u>Strickland</u>. Unlike the 1991 closing argument, the 1999 closing argument simply highlighted the victim impact evidence that Frey's death was costly to her family, friends, and the community and did not make a point of comparing lives. We agree that any objection to the argument would have been overruled. Accordingly, the Missouri Supreme Court's conclusion that no <u>Strickland</u> violation occurred was not contrary to <u>Strickland</u> or unreasonable. The district court properly denied this ineffective assistance of counsel claim.

## III. CONCLUSION

Storey was sentenced to death by three different Missouri juries, over the course of eight years. His case was carefully reviewed by the Missouri courts, and in fact the Missouri Supreme Court twice reversed his death sentence. While we are concerned about the seemingly expanding and overarching role of victim impact evidence in capital cases, under the current state of Supreme Court precedent we cannot reverse the denial of habeas corpus relief on this basis. Accordingly, we affirm.

GRUENDER, Circuit Judge, concurring in part and concurring in the judgment.

I write separately to express my partial disagreement with the analysis of Storey's claims concerning "victim impact evidence" in section II.B.1 of the majority opinion. In particular, I do not join in the opinion's thinly-veiled criticism of *Payne v. Tennessee*, 501 U.S. 808 (1991), the governing Supreme Court precedent regarding the admissibility of victim impact evidence in capital sentencing trials. Nor do I join in the opinion's grudging application of the standard set out in *Payne* to the disputed evidence in this case. Because I agree with the majority's conclusion that Storey is not entitled to relief on the relevant claims, I concur in the judgment as to those claims. I concur in the rest of the majority opinion without reservation.

-24-

Perhaps the most troubling aspect of the majority opinion is its seeming unwillingness to accept *Payne*'s central premise—that victim impact evidence should not be treated differently than other relevant evidence. Before *Payne*, victim impact evidence was verboten, for the Supreme Court had held in *Booth v. Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989), "that the Eighth Amendment prohibits a capital sentencing jury from considering 'victim impact' evidence relating to the personal characteristics of the victim and the emotional impact of the crimes on the victim's family." *Payne*, 501 U.S. at 817. The Court granted certiorari in *Payne* to reconsider the holdings in *Booth* and *Gathers*, which it said had "unfairly weighted the scales in a capital trial" by placing "virtually no limits . . . on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances" while barring "the State . . . from either offering 'a quick glimpse of the life' which a defendant 'chose to extinguish,' or demonstrating the loss to the victim's family and to society which has resulted from the defendant's homicide." *Id.* at 822 (internal citation omitted) (quoting *Mills v. Maryland*, 486 U.S. 367, 397 (1988) (Rehnquist, C.J., dissenting)). The Court announced that it was "now of the view that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Id.* at 825. Accordingly, the Court held that "if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar." *Id.* at 827.

After *Payne*, victim impact evidence is no longer to be treated as a separate category, subject to special constitutional restrictions. As the Court explained,

> [a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Id.* Of course, this does not mean that victim impact evidence is completely immune from constitutional scrutiny. On the contrary, "[i]n the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Id.* at 825 (citing *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986)).

Here, Storey asserts that some of the victim impact evidence introduced in his third penalty-phase trial exceeded the limits established in *Payne*. More specifically, Storey challenges the admissibility of certain exhibits, *see ante*, at 10, as well as the testimony of Trinje Reidelberger, Robert Reidelberger, Jody Harrison, Lavon Marshall, and Karen Stepson, *see ante*, at 9-10. The Missouri Supreme Court rejected Storey's claims concerning this evidence on the merits. *State v. Storey* (*Storey III*), 40 S.W.3d 898, 908-09 (Mo. 2001). The question, then, is whether the Missouri Supreme Court's adjudication of these claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Curiously, the majority decides not to apply the deferential standard set out in § 2254(d)(1) to Storey's claims concerning the testimony of Trinje Reidelberger, Robert Reidelberger, and Jody Harrison.[13] *See ante*, at 13. Nevertheless, the court

---

[13]According to the majority, "the Missouri Supreme Court failed to adjudicate the substantive facets of [Trinje Reidelberger's, Robert Reidelberger's, and Jody Harrison's] testimony." *Ante*, at 13. I disagree. The relevant part of Trinje Reidelberger's testimony consisted of reading the poem she wrote about the victim, Jill Frey, and the relevant part of Jody Harrison's testimony consisted of reading the eulogy she gave at Frey's funeral. I am convinced that the Missouri Supreme Court rejected Storey's challenges to this testimony on the merits, stating that "[t]hough reading a poem or eulogy may not be appropriate in every case, the writings in this case were read into evidence by their respective authors." *Storey III*, 40 S.W.3d at 909. The court went on to say that "[c]learly, either author could have testified about the victim without the aid of a writing," and concluded that "[t]he prosecutor's choice to use the recorded recollection simply does not result in unfair prejudice under these

finds on de novo review that Storey is not entitled to relief on the relevant claims. *See ante*, at 13-14. Applying § 2254(d)(1) to the rest of the disputed evidence, the majority concludes that Storey has not shown that the Missouri Supreme Court's adjudication of his claims resulted in a decision that was either contrary to, or involved an unreasonable application of, *Payne v. Tennessee*, the governing Supreme Court precedent. *See ante*, at 14-17. The outcome the majority reaches is undoubtedly correct, so I concur in the judgment as to these claims.

Although I agree with much of the analysis in section II.B.1, there are three points of disagreement that prevent me from joining that portion of the majority opinion in full. First, it seems to me that the narrow scope of judicial review under § 2254 ordinarily does not leave room for this court to criticize the existing state of Supreme Court precedent, to invite the Supreme Court to expand on or refine existing precedent, or to chide prosecutors who have not transgressed existing precedent. Yet the majority opinion does all of those things. I do not agree with the majority's suggestion that the standard set out in *Payne* is "vague," "barely decipherable," or otherwise unworkable. *See ante*, at 12. The Court in *Payne* held that victim impact evidence is not subject to special constitutional restrictions, so the Court should not be faulted for announcing a general standard rather than a list of specific rules. Because *Payne* sets out a general standard, I would find that *Payne* calls for case-by-case adjudication of claims concerning victim impact evidence based on generally

---

facts." *Id.* The Missouri Supreme Court did not mention Robert Reidelberger's testimony in this section of its opinion. But in the section dealing with Storey's claim concerning the late disclosure of certain victim impact evidence, *see ante*, at 5-6, the court noted that "[t]he mere fact that one of the witnesses [Robert Reidelberger] was confined to a wheel chair" did not affect its analysis, *see Storey III*, 40 S.W.3d at 907. In any event, Storey does not meaningfully argue that Robert Reidelberger's testimony made his trial fundamentally unfair—and I can see no remotely plausible basis for such an argument—so I would hold that Storey has abandoned the portion of his claim relating to Robert. *See Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe*, 578 F.3d 753, 763 n.13 (8th Cir. 2009).

applicable principles of due process. In turn, I would hold that federal courts reviewing adjudications of such claims under § 2254(d)(1) must accord state courts even greater latitude reasonably to decide whether a convicted defendant has shown fundamental unfairness. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). In this instance, Storey plainly has not shown that he is entitled to relief under § 2254(d)(1). Indeed, even if we reviewed all of the disputed victim impact evidence de novo, Storey would not come close to showing that the evidence was so unduly prejudicial that it rendered his trial fundamentally unfair.

In light of the foregoing considerations, there is simply no need for hand-wringing about where "the line" is located; *Payne* teaches that the line is in the same place for victim impact evidence as it is for other types of evidence. *Cf. ante*, at 12. Likewise, I see no pressing need to entreat the Supreme Court for "more guidance" about the permissible scope of victim impact evidence. *Cf. ante*, at 12.[14] While I do

---

[14]It is entirely possible that Storey will seek review in the Supreme Court and that the Court may decide to use this case as a vehicle for reconsidering *Payne*. So far, however, the Court has consistently declined to revisit its stance on victim impact evidence, which has remained undisturbed for nearly two decades. *See, e.g.*, *Kelly v. California*, 555 U.S. ---, 129 S. Ct. 564 (2008) (denying the petitions for writs of certiorari in two capital cases where juries were shown video memorials dedicated to the victims); *see also Kelly v. California*, 555 U.S. ---, 129 S. Ct. 567, 568 (2008) (Breyer, J., dissenting from denial of certiorari) (describing one of the video memorials as "poignant, tasteful, artistic, and, above all, moving"). *But see Kelly*, 129 S. Ct. at 567 (Stevens, J., statement respecting denial of certiorari) ("Having decided [in *Payne*] to tolerate the introduction of evidence that puts a heavy thumb on the prosecutor's side of the scale in death cases, the Court has a duty to consider what reasonable limits should be placed on its use."); *Kelly*, 129 S. Ct. at 568 (Breyer, J., dissenting from denial of certiorari) ("[E]xamples can help elucidate constitutional guidelines. And in my view, the Court should grant certiorari and consider these cases in an attempt to do so.").

not necessarily endorse all of the choices made by the prosecutors who tried this case, I see no plausible basis for finding that their conduct in the third penalty-phase trial infringed Storey's constitutional rights.[15]  Thus, I would refrain from directing gratuitous reproofs to trial counsel (or counsel on appeal), and I would not accuse other state and federal prosecutors of "push[ing] the envelope with this type of evidence," *ante*, at 12.

The second point of disagreement relates to the majority opinion's expressions of concern regarding the testimony of Jody Harrison, Karen Stepson, and Lavon Marshall.  The majority opinion suggests in several places that Harrison's, Stepson's, and Marshall's testimony is problematic insofar as each witness discussed the impact of the murder on her own life, as opposed to merely describing "the unique characteristics of [the victim] as an individual." *See, e.g.*, *ante*, at 15.  The majority identifies Marshall's testimony as the most problematic because her testimony focused exclusively "on the things she heard the night of the murder," *ante*, at 15 (recall that Marshall heard the murder through the apartment wall she shared with Frey, her neighbor and acquaintance, *ante*, at 9-10), along with "the devastating impact of

---

[15]The majority opinion insinuates that the reason the Missouri Supreme Court twice reversed Storey's death sentence had something to do with the misuse of victim impact evidence in Storey's first two penalty-phase trials. *See ante*, at 12.  But the error in Storey's second penalty-phase trial—the trial court's refusal to instruct the jury that no adverse inference could be drawn from Storey's decision not to testify—certainly had no connection to the disputed victim impact evidence in this case. *See State v. Storey* (*Storey II*), 986 S.W.2d 462, 463-65 (Mo. 1999).  And, as far as I can tell, the four errors in the prosecutor's closing argument in Storey's first penalty-phase trial also had nothing to do with the disputed victim impact evidence in this case. *See State v. Storey* (*Storey I*), 901 S.W.2d 886, 900-02 (Mo. 1995) (finding that the prosecutor argued facts outside the record, personalized his argument to the jury, improperly argued that the victim's brother would have been justified in killing Storey if he had discovered Storey attacking the victim, and improperly argued that the jury must weigh the value of Storey's life against the value of the victim's life).

Frey's murder on her life," *ante*, at 15. This comports with the district court's finding that Marshall's testimony "was at the boundary of acceptable victim impact evidence." *Storey v. Roper*, No. 4:05-cv-2073, 2008 WL 2518551, at *40 (E.D. Mo. June 16, 2008).

Here again, the majority seems unwilling to embrace the proposition that, after *Payne*, victim impact evidence is no longer to be treated as a separate category, subject to special constitutional restrictions. Yet the majority opinion does not explain why evidence about the adverse effects of a murder on surviving witnesses should be considered particularly dubious—much less categorically inadmissible—under *Payne*. I am convinced that the disputed testimony about the impact of Storey's heinous crime, including Marshall's testimony about the torment she has suffered, qualifies as "evidence of the specific harm caused by the defendant" and thus does not pose a constitutional problem. *See Payne*, 501 U.S. at 825. In the end, the majority acknowledges that *Payne* does not expressly prohibit such testimony, *ante*, at 16, so its earlier expressions of concern ring hollow.[16] *See also ante*, at 16 (conceding that "Marshall's testimony *arguably* falls within the ambit of *Payne*").

The third and final point of disagreement concerns the majority's apparent distress over the fact that Trinje Reidelberger cried during her testimony. *See ante*, at 14 ("[W]e are troubled by the record which indicates that Trinje was crying

---

[16]Describing Marshall's testimony as especially "problematic," *ante*, at 15, also seems inconsistent with this court's holding in *United States v. Bolden*, 545 F.3d 609 (8th Cir. 2008), *cert. denied*, 558 U.S. ---, 130 S. Ct. 796 (2009), which the majority opinion cites in footnote 8. While the majority suggests that *Bolden* is "not necessarily probative" given the different posture of this case, *ante*, at 16 n.8, I have no doubt that *Bolden* is relevant. If nothing else, *Bolden* decisively refutes Storey's assumption that testimony about trauma suffered by a surviving witness is per se irrelevant and unduly prejudicial. *See Bolden*, 545 F.3d at 627 (holding that testimony by a co-worker who assisted the victim after the victim was shot was "clearly admissible," even though the testimony included a description of "the impact that experience had on the witness's life").

throughout much of her testimony . . . ."). It strains the judicial imagination to envision a scenario in which a witness's "emotional presentation" of otherwise admissible evidence, *see ante*, at 14, could singlehandedly result in fundamental unfairness. Why the majority gives any credence to Storey's empty rhetoric on this issue is puzzling.

I am not aware of any authority, from this circuit or elsewhere, that would justify granting relief to Storey on the ground that Trinje Reidelberger wept while testifying. There is, however, authority that virtually compels us to reach the opposite conclusion. *See, e.g.*, *United States v. Johnson*, 495 F.3d 951, 977 (8th Cir. 2007) (rejecting the defendant's argument that a "tearful and emotional reading of [a] poem" rendered her trial fundamentally unfair); *United States v. Nelson*, 347 F.3d 701, 712-14 (8th Cir. 2003) (rejecting the defendant's argument that the "emotional and, on occasion, tearful testimony" of six victim impact witnesses, including one witness who "was unable to compose herself," rendered his trial fundamentally unfair). I therefore agree with the majority's finding that Storey's trial was not "so infect[ed]" by Trinje Reidelberger's display of emotion "as to render the trial fundamentally unfair." *Ante*, at 14. But I see no good reason for this court to suggest that Trinje Reidelberger fell short of an immutable standard about how witnesses must conduct themselves. The Constitution does not demand witnesses to act like automatons, devoid of human feeling. It should come as no surprise that some witnesses will be overcome with emotion when called on to testify about a friend or family member who has been murdered. I am confident that state and federal trial courts are fully capable of responding appropriately in those circumstances both to protect the defendant's right to a fair trial and to ensure that the witness is treated with respect.

For the foregoing reasons, I concur in the judgment as to Storey's claims concerning victim impact evidence, and I concur in the rest of the majority opinion.

_____